EL PUEBLO DE PUERTO RICO, demandante y apelado, v. RAFAEL ROBERT RIPORT, acusado y apelante.

Núm. 9430.—*Sometido:* Julio 15, 1942. *Resuelto:* Julio 30, 1942.

*Víctor J. Vidal González,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Contra el acusado apelante el Fiscal del Distrito de San Juan formuló dos denuncias separadas. En la primera le imputó que el día 30 de junio de 1940, ilegal, voluntaria y maliciosamente "tenía en su poder y dominio un arma de fuego, a saber: una pistola marca Colt, sin haberla declarado y registrado", infringiendo así el artículo 7 de la Ley Núm. 14 de julio 8 de 1936 ((2) pág. 129); y en la segunda le acusaba de portar ilegalmente dicha pistola, en violación del artículo 1 de la Ley Núm. 14 de 25 de junio de 1924 (pág. 115).

Convicto de ambos delitos y no estando conforme con las sentencias de seis y dos meses de cárcel que respectivamente le fueron impuestas, el acusado interpuso el presente recurso. Para sostenerlo, alega que la corte sentenciadora erró al decidir en su contra las varias cuestiones levantadas por el acusado y que, a su juicio, constituyen defensas válidas y suficientes contra ambas denuncias.

Alega el apelante que no violó la ley sobre registro de armas de fuego, porque la pistola Colt no pertenecía a él y sí a José Nicolás Orsini, a cuyo nombre se encontraba registrada; que el acusado la poseía accidentalmente y no estaba obligado a tenerla registrada a su nombre.

La evidencia introducida por ambas partes establece como hechos indiscutibles los siguientes:

En junio 30 de 1940, el acusado Rafael Robert ocupaba el cargo de pagador en la firma de contratistas de obras ''Santos & Pérez'' y estaba encargado de hacer los pagos a los trabajadores en tres obras que dicha firma tenía en Jayuya. El señor Santos, uno de sus jefes, le aconsejó que para la seguridad del dinero que tenía que llevar semanalmente a la isla, debía obtener una licencia para portar un arma, y el mismo Sr. Santos le ayudó a conseguir la licencia, la cual le fué concedida en 22 de junio de 1940. El acusado pidió a Santos le adelantara el dinero para comprar un revólver, pero Santos lo aplazó para la semana siguiente. El 29 de junio por la mañana, antes de salir para Jayuya con unos $3,800 en efectivo para pagar a los obreros, y teniendo ya licencia para portar un revólver, el acusado le pidió prestada a Nicolás Orsini, sobrestante de la firma, una pistola que éste tenía guardada en la oficina. Orsini le prestó la pistola por ese día, para que fuese a hacer el pago a la isla, informándole que estaba registrada a su nombre. Robert regresó de Jayuya como a las diez de la noche del mismo día, encontrándose en la Terraza del Parque, en Santurce, con José Torres Silva, otro pagador de la misma firma Santos & Pérez. A los dos les había sobrado dinero, el que guar-

840

daron junto con las libretas en una caja de lata, y salieron juntos para ir a entregar el dinero sobrante a la caja de seguridad que el Sr. Santos tenía en el Anadales Beach Club.

Al pasar por el Bar Guarin, que está situado en el kilómetro 7 de la misma carretera de Loíza que conduce al Anadales Beach Club, Robert y Torres, que no habían comido aún, entraron a dicho bar, se sentaron en una mesa y ordenaron les preparasen comida. En una mesa cercana se encontraban cinco o seis jóvenes, tomando licor y en aparente estado de embriaguez. Al ir Robert a echar una moneda en una radiola que allí había, trató de impedírselo uno de dichos jóvenes y con ese motivo surgió una discusión entre el joven y Robert. Al ver que los demás jóvenes venían hacia él en actitud agresiva, Robert hizo ademán de sacar la pistola, pero no hizo uso de ella. Terminado el incidente, Robert y Torres volvieron a su mesa y los jóvenes salieron del bar para ir a avisar a la policía. Cuando llegaron al bar los policías Nieves y Ortiz, el acusado le entregó la pistola a Nieves, le dijo que él era pagador de la casa Santos & Pérez y le mostró la licencia que le autorizaba a portar un revólver. El policía Nieves declaró que el acusado no estaba en estado de embriaguez cuando él le ocupó el arma, y que los jóvenes que fueron a denunciarlo estaban ebrios. Declaró también que Robert tenía en su poder una suma considerable de dinero.

La prueba de cargo estableció el hecho de que la pistola que portaba el acusado estaba registrada a nombre de su dueño, José Nicolás Orsini.

Como consecuencia del incidente ocurrido entre los jóvenes ya mencionados y el acusado, éste fué denunciado por un delito de acometimiento y agresión grave, del cual fué absuelto.

La corte sentenciadora llegó a las siguientes conclusiones:

1a. Que el acusado fué al Bar Guarin con el propósito de divertirse; y que en ese momento no estaba allí como pagador de Santos & Pérez y sí como un individuo cualquiera.

2a. Que la corte municipal erró al absolver al acusado del delito de acometimiento y agresión, pues no se trataba de un caso de defensa propia.

3a. Que el acusado trató de disparar e hizo todo lo humanamente posible para que el tiro saliera, y si el disparo no salió y no mató fué por causas ajenas a su voluntad—porque el arma amarró fuego.

4a. Que la pena de un mes de cárcel impuesta por la corte municipal, por portar armas, es benigna; y tomando en cuenta las circunstancias cómo se portaba el arma *y cómo se utilizó esa arma*, la corte le va a imponer dos meses de cárcel.

5a. Que como el acusado no tiene el arma inscrita a su nombre, a él le compete demostrar que hubo necesidad imperiosa de portar el arma y justificar a satisfacción de la corte que Orsini le prestó el arma. Que la corte no está satisfecha en absoluto en cuanto a que Orsini le diera el arma al acusado y que por eso lo declara culpable de tener un arma no inscrita y le impone seis meses de cárcel.

Las anteriores conclusiones no están justificadas por la prueba y son a nuestro juicio contrarias a derecho.

¿Si el acusado estaba autorizado para portar un arma "mientras se encuentre en el desempeño de las funciones del cargo que ejerce" o sea mientras lleve sobre su persona sumas de dinero de su principal, y en la noche de autos portaba un arma registrada a nombre de otro como su dueño, quien se la prestó para el desempeño de sus deberes, perdió el acusado su condición de portador legal del arma por el solo hecho de haberse detenido a comer en un restaurante antes de llevar el dinero sobrante a su principal?

No creemos que el rigor de la ley deba llegar hasta el extremo de exigir que el portador de sumas de dinero, con licencia para llevar un arma para su defensa, esté obligado a abstenerse mientras dure su misión de satisfacer la necesidad fisiológica de comer y beber, so pena de convertirse por ese solo hecho en un transgresor de la ley. La prueba demos-

tró que el acusado y su compañero, llevando bajo su custodia los fondos sobrantes, entraron al restaurante a comer; y que mientras esperaban la comida fué que ocurrió el incidente que ya hemos relatado. El acusado tenía derecho a comer en el restaurante y al hacerlo así no se convirtió en un portador ilegal del arma. El incidente entre él y los jóvenes, del cual fué exonerado y absuelto por no haber sido provocado por él, no convirtió en ilegal la portación del arma. La prueba demostró que el acusado no hizo uso de ella y que se limitó a hacer el ademán de sacarla, al ver que sobre él venían cinco o seis hombres en actitud hostil.

La conclusión de que el acusado disparó y que si no hubo un herido o muerto fué porque la pistola amarró fuego, se basó exclusivamente en la declaración de dos testigos, dos de los jóvenes que provocaron el incidente, quienes en el momento del suceso se encontraban ebrios y en el del juicio tenían interés en demostrar su inocencia. Esas dos declaraciones quedaron destruídas por las de los dos policías que arrestaron al acusado y ocuparon y examinaron la pistola y las balas que ésta contenía. Las balas no habían sido picadas. Es de conocimiento general, que cuando se hace uso de una pistola o revólver y el arma amarra fuego, el casquillo aparece picado por el gatillo.

Fué grave error el que cometió el tribunal inferior al aumentar a dos meses la pena por la portación del arma, tomando en consideración el uso que del arma hiciera el acusado para defenderse de los jóvenes que trataron de agredirle. El acusado fué absuelto de la denuncia que se le formuló por agresión grave y tenía y tiene derecho a la protección que le da esa sentencia absolutoria. La sentencia de la corte inferior le privó de esa protección al sostener que el acusado era culpable de portar un arma prohibida por haber hecho uso de ella para fines de ofensa y no de defensa. La sentencia recurrida equivale a una revocación del fallo absolutorio.

La prueba de cargo estableció el hecho de que la pistola ocupada al acusado estaba inscrita a nombre de Orsini. Vicente Santos, principal del acusado, declaró que el acusado le pidió prestada la pistola a Orsini para llevarla en el viaje a Jayuya, y que Orsini se la entregó. Esa declaración fué corroborada por la del otro pagador, Torres. De todos modos quedó demostrado que el acusado tenía licencia para portar un revólver, y que teniendo que salir de viaje con tres mil y pico de dólares de su principal, en presencia de éste tomó una pistola que había en la oficina y se la llevó consigo para hacer el viaje que estaba obligado a hacer. Bajo esas circunstancias, es inmaterial si Orsini le entregó la pistola o si el acusado la tomó. El hecho esencial es que el acusado la tomó y portó para un fin específico y determinado, para la realización del cual él estaba autorizado a portar un arma.

El fiscal admite en su alegato que ''si la licencia obtenida por el acusado para portar un revólver no hubiere contenido limitación alguna en cuanto a las ocasiones en que dicha arma podía ser portada por el acusado, tendríamos que convenir con el apelante en que no se había cometido el delito de portar armas, no obstante portar éste una pistola y no un revólver como le autorizaba dicha licencia.''

Convenimos con el fiscal en que si una persona autorizada para portar un revólver para un fin determinado, lleva consigo una pistola en vez de un revólver, no viola por ese sólo hecho la ley prohibiendo la portación de armas, siempre que el acusado no se haya desviado innecesariamente o sin justificación de la misión que se le encomendara y para la cual se le autorizó a portar un arma. 68 C. J., pág. 28, sección 19(2); *Pueblo* v. *Rodríguez,* 35 D.P.R. 276.

La licencia obtenida por el acusado le autorizaba para portar un revólver ''para fines de defensa solamente, mientras se encuentre en el desempeño de las funciones del cargo que ejerce''. No violó la ley por el sólo hecho de portar una pistola.

El acusado tenía la obligación de transportar el dinero y el arma que llevaba para su protección por la vía más expedita posible, sin dilaciones o desviaciones innecesarias o injustificadas. Dice 68 C. J., pág. 22, sec. 14:

". . . No debe haber ninguna desviación de su curso, ni volver hacia un lado, detenerse en el camino o andar de un lado para otro en busca de placeres u otros asuntos, ni debe exhibirse ni dispararse el arma en la calle pública ni en la casa de otra persona; *pero una desviación o el detenerse o ir hacia un lado para propósitos razonables o necesarios es permisible.*"

El propósito que llevó al acusado y a su compañero al Bar Guarin, el de comer, era un propósito razonable y necesario que a nuestro juicio justifica que ellos se desviaran de o se detuvieran en su camino antes de terminar la misión que les fué encomendada. El ir a echar una moneda en una caja de música, para oír un récord fonográfico mientras esperaban la comida o mientras comían, no es un acto ilegal ni tan irrazonable o innecesario que pueda ser considerado como suficiente para convertir al que lo realiza en un criminal. A no ser por la intervención agresiva de aquellos jóvenes que actuaban bajo la influencia del licor que allí mismo habían consumido, nada hubiese ocurrido y la misión del acusado y su compañero se hubiese terminado en paz.

*Procede por lo tanto revocar las dos sentencias recurridas y absolver al acusado apelante.*