El Pueblo de Puerto Rico, demandante y apelado, *v.* Víctor Fernández Piñán, acusado y apelante. El Mismo v. El Mismo.

Núms. 10,871, 10,872.—*Sometidos:* Diciembre 5, 1945. *Resueltos:* Diciembre 13, 1945.

*M. García González,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández* y *J. Rivera Barreras,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En estos dos casos el apelante fué acusado de portar un arma prohibida y de no haber registrado la misma ante el Jefe de la Policía del Distrito de Caguas. El acusado ha apelado de sentencias condenatorias en ambos casos.

No hay discrepancia alguna en cuanto a la prueba pertinente. El acusado era teniente de la Policía Auxiliar, que fué organizada para actuar durante la guerra a tenor con la Ley núm. 11, Leyes de P. R., 1942 ((1) pág. 307). El Comandante de la Policía Auxiliar en Caguas declaró que durante el mes de octubre de 1942, a petición de la Policía Insular, los policías auxiliares estaban cooperando con la última en el arresto de las prostitutas que estaban transmitiendo enfermedades venéreas a los soldados, y que él designó al acusado, a Ramón Torres y a Pablo García para realizar esta labor.

En octubre 20 de 1942 el acusado se encontraba en el cuartel de la policía con Ramón Torres cuando llegó un soldado continental solicitando que lo ayudaran a buscar una prostituta que le había infectado. Al acusado y a Torres se les encomendó este trabajo y salieron con el soldado. Un individuo de nombre Pablo Merced, amigo del acusado, se unió al grupo para enseñarles donde vivía la mujer.

Mientras buscaban a la mujer, Merced se detuvo en varios sitios inquiriendo sobre su residencia. En uno de esos sitios, una tienda, Dámaso González y otro hombre pasaron corriendo por donde estaban los tres hombres. Cuando ellos entraron, el tendero les informó que González corría porque había estado tratando de empeñarle una pistola que se encontraba sobre el mostrador en una bolsa de papel. El acusado recogió la pistola y le dijo al tendero que cerrara la tienda y lo acompañara hasta el cuartel de policía para que informara las razones por las cuales estaba en posesión de la pistola.

El grupo salió hasta la estación de policía. En su camino pasaron por el sitio donde vivía la hermana de la prostituta en cuestión. Mientras se encontraban frente a la casa, el acusado hizo alusiones en cuanto a las virtudes de la hermana. Dámaso González, ofendido por esta acusación, salió de la casa y entabló un altercado con el acusado, a conse-

cuencia del cual González hirió al acusado en la espalda con un cuchillo y el acusado hirió de bala a González y a una circunstante con la pistola de referencia. El acusado entregó. entonces la pistola a Tomás Ramos Requena, subalterno suyo de la Policía Auxiliar que había acudido al sitio de los hechos. Llegó un policía insular y Ramos le entregó a él la pistola.

La sección 4 de la Ley núm. 11 de 1942 dispone que "Durante la existencia de un estado de guerra entre nuestra nación y cualquier país o nación extranjera, el Gobernador de Puerto Rico podrá nombrar por término específico tantos policías especiales, sin remuneración, como él crea necesario. Durante el término de servicio dichos policías especiales tendrán todos los poderes, facultades y deberes de miembros de la policía insular y como tales policías especiales, usarán una insignia que les suministrará el Gobierno Insular." Y bajo la Ley núm. 14, Leyes de P. R., 1924 (pág. 115), los miembros de la Policía Insular pueden legalmente portar armas. El acusado sostiene que a tenor con estas disposiciones legales él no ha cometido los delitos que se le imputan.

Sin embargo, no es necesario que nosotros determinemos si los miembros de la Policía Auxiliar estaban, como proposición general, autorizados por ley a portar armas. En este caso el acusado estaba cumpliendo con un deber asignádole como oficial de la Policía Insular. Es verdad que el objeto primordial de la Ley núm. 11 fué establecer una Policía Auxiliar para servicio durante oscurecimientos y alarmas. Pero la sección 4 no impide a los policías auxiliares así nombrados realizar otras labores que les son debidamente encomendadas en cooperación con el esfuerzo de guerra. Y no hay duda que la misión que se encontraba realizando el acusado cae dentro de esta categoría.

Por tanto, nos hallamos frente a una situación en la cual el acusado, mientras legalmente cumplía un deber de policía,

vino en conocimiento de que se estaba cometiendo otro delito. Creemos que bajo tales circunstancias él estaba facultado para incautarse de la pistola y de requerir al tendero a que lo acompañara al cuartel para que explicara sobre su posesión de la pistola. Si bien no se ha citado ningún caso exactamente aplicable, creemos que a tenor de los hechos aquí expuestos la posesión de la pistola por el acusado fué accidental y por lo tanto sus convicciones en los delitos que se le imputan no deben subsistir. *Cf. Pueblo v. Borges*, 23 D.P.R. 524; *Pueblo v. Suazo*, 65 D.P.R. 28. El hecho de que el acusado pueda o no haber sido culpable de otro delito por haber herido de bala a González y a la circunstante nada tiene que ver con los casos ante nos.

*Las sentencias serán revocadas y se dictarán nuevas sentencias absolviendo al acusado.*