EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WALDEMAR PELLOT PÉREZ, acusado y apelante.

*Número:* CR-65-94    *Resuelto:* 18 de noviembre de 1965

*Víctor Tirado Saltares* y *Elizabeth Armstrong de Watlington,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata de un caso de posesión y venta de narcóticos. El apelante fue acusado de infringir el Art. 29 de la Ley de Narcóticos de Puerto Rico, 24 L.P.R.A. sec. 974z. Más adelante examinaremos dicho artículo. El pliego acusatorio contenía tres cargos, a saber, (1) poseer, (2) vender y (3) ocultar y transportar la droga narcótica conocida como heroína. Visto el juicio el apelante fue absuelto de los cargos segundo y tercero y convicto del primero.

En apelación hace dos señalamientos de error. En el primero argumenta que el tribunal erró al entender que el acusado tenía en su posesión y dominio el mencionado narcótico, dentro del significado del citado Art. 29; y en el segundo impugna la suficiencia de la prueba. En su alegato, el apelante

discute conjuntamente ambos errores. Así haremos nosotros.

En realidad los dos señalamientos de error presentan un solo problema: determinar si el apelante en efecto infringió el mencionado Art. 29 de la Ley de Narcóticos. Veamos primero la referida disposición legal tal como rige en Puerto Rico y luego haremos un sucinto análisis de la prueba.

El mencionado Art. 29, en lo pertinente, o sea, en lo que se refiere a la heroína (pues también cubre el opio, la marihuana y productos de éstos) lee como sigue:

"Queba absolutamente prohibida la tenencia, posesión, traspaso, uso, aplicación, prescripción, manufactura, preparación o cualquier transferencia o recibo, así como la introducción, la ocultación y la transportación en Puerto Rico de: . . .[l]a droga narcótica conocida como heroína, así como cualquier preparación o producto elaborado de la misma sin importar su forma y naturaleza que contenga cualquier cantidad de esta droga."

La prueba de cargo consistió—además de un sobre o "*deck*" de heroína que se presentó en evidencia—de los testimonios del químico Fabián Álvarez Nazario y del agente de Rentas Internas Gerardo Mendoza Pérez. Sólo nos interesa la declaración de este último para efectos de dilucidar la cuestión en controversia.

Declaró el referido agente que el día de los hechos, 10 de mayo de 1963, trabajaba como agente encubierto; que se encontró en Hato Rey con el acusado-apelante quien le preguntó si iba a "capiar estofa" a lo que le contestó que sí; que el acusado le dijo que el hombre era Chiqui Kercadó y que lo llevó ante él; que este último se negó a venderle porque no lo conocía; que Chiqui Kercadó le dijo que le entregara cuatro dólares al acusado y que así lo hizo; que Chiqui Kercadó le entregó un "*deck*" de heroína al acusado a cambio de los cuatro dólares y éste a su vez se lo entregó a él (al agente).

La prueba que hemos reseñado, y que fue creída por el tribunal de instancia, demostró que en una etapa de la transacción la heroína estuvo en manos del apelante; es decir,

estuvo en su poder por algún tiempo aunque presumiblemente corto. ¿Constituye este hecho un acto punible según nuestro estatuto?

La posición del apelante es que él no estuvo en la posesión de la droga porque "para que se entienda que se está en la posesión de algo, uno debe ser capaz de tener el poder de ejecutar algún acto de dominio sobre esto."

Aparentemente el apelante cree que la posesión que castiga la Ley de Narcóticos es lo que el Código Civil llama "posesión civil" y que consiste en la tenencia de una cosa por una persona, unida a la intención de haberla como suya. Código Civil, Art. 360; 31 L.P.R.A. sec. 1421. No es ese el caso. La Ley de Narcóticos prohibe la mera posesión o tenencia de las drogas prohibidas, o sea, lo que el Código llama la "posesión natural." Esto es así porque el propósito de la Ley de Narcóticos no es reglamentar la propiedad y las diversas maneras de poseer una cosa. El propósito de la Ley de Narcóticos es proteger la salud, la moral y la seguridad públicas y su promulgación obedece al deber del Estado de proteger esos valores y de promover el bienestar general. *Jenkins* v. *State*, 137 A.2d 115 (1957). Para lograr esos fines la ley prohibe la posesión y venta de narcóticos, salvo las excepciones que por ley se hagan. *State* v. *Lee*, 382 P.2d 491 (1963).

Nuestro Art. 29 no distingue y bajo él la posesión interina o temporera de la droga prohibida con el propósito de un traspaso ilegal constituye posesión ilegal. En el contexto de la ley, y atendiendo a su propósito las palabras posesión, transportación y control de la droga prohibida deben entenderse en su significado usual. *State* v. *Richard*, 158 So.2d 828 (1963). No es correcta la posición del apelante de atribuirle a la palabra posesión utilizada en la Ley de Narcóticos el concepto técnico de posesión civil antes mencionado.

Para aclarar dudas vamos a ir más a fondo en esta cuestión, porque hay legislación federal y una jurisprudencia

interpretativa de la misma que puede dar la impresión de que es contraria a lo que aquí resolvemos. Mas no es así. Vamos a explicarnos.

Con anterioridad a la vigencia de la Ley de Narcóticos que rige en Puerto Rico, Ley Núm. 48 de 18 de junio de 1959, 24 L.P.R.A. secs. 973 y ss., el campo de las drogas narcóticas estuvo reglamentado por la Ley Núm. 12 de 19 de abril de 1932 (33 L.P.R.A. secs. 1393–1395, ed. 1956) y por la Ley Núm. 61 de 13 de mayo de 1934 (24 L.P.R.A. secs. 951 y ss., ed. 1955). Ambas fueron derogadas por la ley vigente. *Leyes*, 1959, pág. 156. La Ley Núm. 12 de 1932 prohibía la fabricación, transportación, posesión, uso, compra, etc. de marihuana. La Ley Núm. 61 de 1934 prohibía la fabricación, posesión, venta, etc. de "cualquier droga narcótica" excepto según autorizado por la ley. 24 L.P.R.A. sec. 962, ed. 1955. Dicha Ley Núm. 61 de 1934 había sido calcada de la Ley Uniforme de Drogas Narcóticas, 9B *Uniform Laws Anno.* (1957) pág. 279, la cual fue adoptada en el año 1932 por la Conferencia Nacional de Comisionados Sobre Legislación Estatal Uniforme.

La Ley Núm. 48 de 18 de junio de 1959, la cual derogó la legislación antes mencionada, dispuso en general en su Art. 3 que:

"Ninguna persona podrá manufacturar, poseer, controlar, vender, recetar, suministrar, aplicar o en forma alguna usar, recibir, o transferir las drogas narcóticas o compuestos de las mismas, excepto como más adelante se dispone en este Capítulo." 24 L.P.R.A. sec. 974, ed. 1964.

■ Al especificar los actos prohibidos en relación con las drogas conocidas como opio, marihuana y heroína, dicha Ley Núm. 48, como vimos antes, prohibe "la tenencia, posesión, traspaso, uso, aplicación, prescripción, manufactura, preparación o cualquier transferencia o recibo, así como la introducción, la ocultación y la transportación en Puerto Rico" de las antes mencionadas drogas narcóticas. 24 L.P.R.A. sec. 974z. Téngase presente que nuestra ley (la citada Ley

Núm. 48 de 1959) fue aprobada precisamente para "ampliar el campo de regulación con disposiciones más detalladas y más estrictas" y para "cubrir necesidades y problemas nuevos" debido a que las leyes federales sobre narcóticos "no están diseñadas para detener el tráfico ilícito de drogas sin la ayuda de leyes estatales que las complementen." Véase el Informe Complementario sobre el P. de la C. 231, *Diario de Sesiones* (1958) Vol. X, pág. 1937. Es claro que a la luz de la intención legislativa y de la propia letra clara y explícita de la ley debemos concluir que la tenencia o posesión de la droga —siempre y cuando que sea ilegal—constituye delito aunque dicha posesión sea breve y no debe haber dudas de que así lo constituye en un caso como éste en que se adviene a dicha posesión temporera deliberadamente y como un paso de una transacción ilegal.

Bastaría tal vez, para disponer del caso de autos, con la reseña que hemos hecho sobre la trayectoria legislativa que ha gravitado sobre el campo de las drogas narcóticas en Puerto Rico a no ser por la presencia de pronunciamientos jurisprudenciales en la esfera federal que, como dijimos antes, aparentemente proponen una solución contraria a la que asumimos en esta opinión. Pasaremos, pues a analizar el estado del derecho jurisprudencial federal.

En la esfera federal rigen dos leyes que, persiguiendo objetivos distintos, reglamentan el campo de los narcóticos. Una es conocida como la Ley Harrison, la cual forma parte del Código de Rentas Internas. 26 U.S.C.A. secs. 4701 y ss. Dicho estatuto es uno de tipo fiscal.(¹) La disposición que más relación guarda con el problema que nos ocupa es la sección 4704(a) del Título 26, la cual copiamos al margen.(²)

---

(¹) Anotación, *"Harrison Narcotic Act,"* 13 A.L.R. 858, sup. en 39 A.L.R. 236; Hughes, *"United States Narcotics Laws,"* Crim. L. Rev. 520 (1964).

(²) "It shall be unlawful for any person to *purchase, sell, dispense*, or *distribute* narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid

La otra—ley de 9 de febrero de 1909, según enmendada, 21 U.S.C. secs. 171 y ss.—se encuentra ubicada dentro de la legislación concerniente a la salud y su propósito primordial consiste en prohibir la importación a los Estados Unidos de las drogas narcóticas. *Palmero* v. *United States*, 112 F.2d 922 (1940). Copiamos al margen la sección pertinente y subrayamos su último párrafo. (³)

■ Lo primero que debemos recalcar en relación con estos dos estatutos, es que ninguno de ellos, a diferencia del nuestro, castiga la mera posesión como tal. *United States* v. *Santore,* 290 F.2d 51 (1960); *Pierriero* v. *United States,* 271 Fed. 912 (1921); *Senick* v. *United States,* 271 Fed. 918 (1921); *Erwing* v. *United States,* 323 F.2d 674 (1963). Éste es un factor que diferencia fundamentalmente la legislación federal de la nuestra y que por lo tanto hace necesario e inevitable que nuestra jurisprudencia sobre esta materia sea diferente de la federal.

Lo segundo que debemos aclarar es que el hecho de la posesión, bajo las leyes federales mencionadas, tiene una fun-

---

stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person *in whose possession* the same may be found." (Subrayado nuestro.)

(³) "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"*Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.*" 21 U.S.C. Sec. 174. (Subrayado nuestro.)

ción exclusivamente evidenciaria. Es decir, cuando el legislador dispuso que la posesión constituiría evidencia prima facie de la violación de los delitos castigados y que se consideraría evidencia suficiente para sostener una convicción, lo que se hizo fue ubicar en el acusado el peso de la prueba de modo que explicara a saciedad por qué se le había ocupado narcóticos en su poder. Operan, pues, como presunciones que el encausado viene llamado a rebatir. La jurisprudencia federal es abundante al respecto. Basta con señalar los siguientes casos: *Brightman* v. *United States*, 7 F.2d 532 (1925); *Lott* v. *United States*, 218 F.2d 675 (1955); *McDade* v. *United States*, 206 F.2d 494 (1953); *Aeby* v. *United States*, 206 F.2d 296 (1953); *Goode* v. *United States*, 149 F.2d 377 (1945); *United States* v. *Hernández*, 290 F.2d 86 (1961); *Velásquez* v. *United States*, 244 F.2d 416 (1957); *United States* v. *Santore*, supra; *Rodella* v. *United States*, 286 F.2d 306 (1960); *Brumbelow* v. *United States*, 323 F.2d 703 (1963). Esta función evidenciaria del hecho de la posesión en estos estatutos es lo que ha dado lugar, según veremos de inmediato a que los tribunales acudan a ficciones y a distinciones a veces sutiles a fin de determinar si las presunciones establecidas pueden o no operar en casos particulares.

En *Yee Hem* v. *United States*, 268 U.S. 178 (1925) el Tribunal Supremo federal, interpretando una disposición sobre el opio que contenía una presunción similar, sostuvo la validez de la misma advirtiendo que para que una presunción estatutaria tenga validez constitucional—a la luz de la cláusula del debido proceso de ley y del privilegio de no autoincriminación—tiene que haber una relación razonable entre el hecho probado y el hecho presumido. (4) Esta advertencia ha dado lugar a que la jurisprudencia federal haya tenido que acudir a distinciones bastante sutiles en cuanto a qué consti-

---

(4) Cf. *Tot* v. *United States*, 319 U.S. 463 (1943) donde se analiza también esta doctrina a la luz de la ley federal de armas. V. Nota, *"Constitutionality of Rebuttable Statutory Presumptions,"* 55 Colum. L. Rev. 527 (1955).

tuye "posesión" pues de otro modo sería cuestionable la presunción estatutaria en su aplicación a los hechos concretos. V. *United States* v. *Santore,* supra; *United States* v. *Gregory,* 309 F.2d 536 (1962).

Otra razón por la cual los tribunales federales han acudido a ficciones en cuanto al concepto posesión, estriba en su propósito de darle la mayor efectividad posible al estatuto, no de quitársela. Así, se ha hablado de "posesión constructiva" o presunta, de posesión en sentido de dominio y control rechazándose, sin embargo, la idea de "posesión imputada." V. *Hernández* v. *United States,* 300 F.2d 114 (1962); *United States* v. *Jones,* 308 F.2d 26 (1962); *United States* v. *Countryman,* 311 F.2d 189 (1962); *Arellanes* v. *United States,* 302 F.2d 603 (1962); *Brothers* v. *United States,* 328 F.2d 151 (1964); *White* v. *United States,* 294 F.2d 952 (1961); Nota, *"Narcotics-Inference in Federal Statute Implying Guilt from Fact of Unexplained Possession can be Applied to an Aider and Abettor of Sale Without Showing of Possession,"* 110 U. Pa. L. Rev. 903 (1962).

Como puede verse por lo expuesto, sería un error interpretar nuestro estatuto a tono con la jurisprudencia federal. Lo sería dada la diferencia de objetivos entre la legislación de ambas jurisdicciones y también por el hecho de la función exclusivamente procesal que caracteriza el concepto posesión en las leyes federales. Para poner de relieve la dificultad aludida examinemos dos casos.

En *United States* v. *Santore,* supra, se acusó a un tal Narducci, conjuntamente con otros, de una violación a la sección 174 del Título 21 U.S.C. La única participación de Narducci en los hechos que dieron lugar a la acusación consistió en que fue sorprendido mientras trataba de abrir un paquete que él había sacado del baúl de un automóvil. Tal parece que al ser sorprendido el temor lo hizo desprenderse del paquete de inmediato sin lograr su objetivo pero lo cierto es que el paquete estuvo en su poder por un lapso breve. Revo-

cando su convicción se expresó de este modo el Juez Waterman:

"El Estado arguye que al Narducci asir momentáneamente el paquete ello constituyó un acto de 'posesión' y que en dicho momento los delitos por los cuales él y Farlentino fueron acusados quedaron consumados. No podemos convenir. Una presunción estatutaria es válida sólo cuando existe una relación razonable entre el hecho a ser presumido y el hecho probado. *Yee Hem* v. *U.S.*, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904, supra. *El delito castigado por la sección 174 no es la posesión de narcóticos*, sino más bien la transportación, ocultación, recibo, compra o venta de narcóticos; y, por consiguiente, de modo que la presunción contenida en dicha sección cumpla con el requisito de validez tenemos que definir 'posesión' según usada en la misma como que incluye sólo aquel tipo de control del cual pueda inferirse razonablemente que el poseedor iba a cometer uno o más de los actos especificados que han sido declarados delitos. El asimiento del paquete por Narducci no constituyó, claramente, dicha posesión pues un momento breve después se despojó de él voluntariamente." 290 F.2d 64–65. (Subrayado nuestro.) (5)

Como puede verse por las palabras transcritas, el razonamiento en virtud del cual se absolvió a Narducci no puede darse bajo nuestra Ley de Narcóticos por ser incompatible con la misma. Nuestra ley hace de la posesión no permitida un delito.

El otro caso sobre el cual queremos llamar la atención es *United States* v. *Gregory*, supra. Se trataba aquí de dos personas, nombradas Gregory y Sumpter, que viajaban en un automóvil en dirección a un hotel. Gregory, el conductor, estacionó el automóvil frente al hotel y se encaminó hacia él. Momentos después reapareció Gregory con una funda de papel y entró al carro. Los agentes de narcóticos observaban la transacción y al proceder al arresto Sumpter arrojó la funda fuera del carro. Luego de apuntar el Tribunal, citando a *Santore*, supra, que la posesión probada estaba razonable-

---

(5) Aunque este caso posteriormente se reconsideró por el pleno del Tribunal, las observaciones en torno a Narducci se sostuvieron. V. pág. 74.

mente ligada al hecho a ser presumido—la transportación de narcóticos—y que por tal razón la brevedad de la posesión no era relevante, procedió, a la pág. 538, a afrontar la alegación de Sumpter de que el caso caía dentro de la doctrina de *Santore* en estos términos:

"La posesión de Narducci, en el caso de *Santore,* supra, nunca llegó a ser efectiva; antes de tener una oportunidad de hacer algo con los narcóticos los soltó y los narcóticos permanecieron donde estaban. La posesión de Sumpter, aunque también breve, fue más completa . . . . La distinción no es . . . meramente entre 'devolver a' y 'desprenderse de' sino más bien entre un apoderamiento tan fugaz que nada se pretende conseguir y una posesión que permite al poseedor hacer, todo lo que intentó hacer cuando tomó la posesión. En estas circunstancias creemos que es aplicable la presunción estatutaria."

Recuérdese que en el caso de autos la posesión de la droga por el apelante, aunque breve, fue tal que le permitió hacer lo que se proponía: pasársela al comprador.

¿Cabría en nuestro derecho—que castiga la mera tenencia y que no opera en términos de presunción—abrigar una distinción tan sutil como la trazada entre el caso de *Santore* y el de *Gregory*? Obviamente no, pues la justificación que en el derecho federal pueda hallarse para sostenerla no encuentra apoyo en nuestro estatuto.

En cuanto a la Ley Uniforme de Drogas Narcóticas cabe apuntar que a la misma se le ha otorgado, en términos generales, una interpretación similar a la que se le ha conferido a las leyes federales. V. Anotación, *"Constitutionality, construction and application of Uniform Narcotic Drug Act,"* 119 A.L.R. 1399; Anotación, *"What constitutes 'possession' of a narcotic drug proscribed by section 2 of the Uniform Narcotic Drug Act,"* 91 A.L.R.2d 810; Anotación, *"Harrison Narcotic Act,"* 13 A.L.R. 858, supl. en 39 A.L.R. 236. Sin embargo, en *Sutton* v. *State,* 343 S.W.2d 452 (1961) la Corte de Apelaciones Criminales de Texas, en cuya jurisdicción impera la Ley Uniforme, resolvió, en una situación esencial-

mente igual a la del caso de autos, que se había incurrido en el delito de poseer narcóticos. Veamos los hechos del caso no sin antes recordar que nuestra ley, según hemos visto, es mucho más amplia y explícita que la Ley Uniforme.

Tratábase, en *Sutton* v. *State*, supra, de un agente encubierto que se allegó hasta el apartamiento de la Sra. Sutton inquiriendo de ésta que le consiguiera heroína. Ella le contestó que debía realizar antes una llamada telefónica lo cual procedió a hacer desde un teléfono público fuera del apartamiento. El agente bajó con ella hasta el teléfono. Al concluir la llamada ella le informó al agente que todo estaba bien y que la heroína la traerían dentro de poco. Retornó el agente al apartamiento y ella se quedó afuera. Posteriormente subió ella al apartamiento y le pidió al agente $21.00 y salió. Regresó de nuevo al apartamiento esta vez acompañada de una mujer quien antes de salir le dejó un papel al agente. Luego la Sra. Sutton le entregó al agente encubierto un paquete conteniendo tres cápsulas de heroína.

Ante una alegación de que la evidencia era insuficiente para probar la posesión, ya que sólo demostraba que la heroína estuvo en sus manos por algunos 25 segundos, el Tribunal resolvió que el lapso de tiempo durante el cual la heroína estuvo bajo su control no era lo determinante en cuanto a la posesión ilegal de la misma.

Al interpretar nuestro estatuto en la forma que aquí lo hacemos no hemos hecho nada más que darle efectividad al mandato legislativo en un área donde, como es sabido por todos, están en juego problemas de gran trascendencia social. V. *Pueblo* v. *López Rivera*, 91 D.P.R. 693 (1965); *Jenkins* v. *State*, 137 A.2d 115 (1957). Mas como en todo problema jurídico la gama de posibilidades suele ser amplia debido a que es imposible prever todos los casos, cabe puntualizar que no en todas las ocasiones posibles la posesión o tenencia de narcóticos constituirá delito. Aparte de que la propia Ley de Narcóticos se encarga de establecer excepciones al efecto, 24

L.P.R.A. sec. 974a, merece mención la doctrina sobre posesión o portación incidental que hemos desarrollado en torno a los preceptos pertinentes de nuestras leyes sobre armas, a fin de impartir justicia en cada caso. Cf. *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471 (1961); *Pueblo* v. *Arana*, 72 D.P.R. 821 (1951); *Pueblo* v. *Gil de Lamadrid*, 70 D.P.R. 918 (1950); *Pueblo* v. *Fernández*, 65 D.P.R. 497 (1945); *Pueblo* v. *Suazo*, 65 D.P.R. 28 (1945); *Pueblo* v. *Robert*, 60 D.P.R. 837 (1942); *Pueblo* v. *Pérez*, 40 D.P.R. 754 (1930); *Pueblo* v. *Moll*, 28 D.P.R. 783 (1920).

▇ No se cometieron los errores señalados. El tribunal de instancia pudo haber hallado culpable al apelante también del cargo de venta porque, según la prueba, éste fue partícipe directo en una compraventa ilegal de narcóticos y su situación era la de un principal o autor en el delito cometido. Código Penal, Art. 36; 33 L.P.R.A. sec. 82.

*Se confirmará la sentencia apelada.*

El Señor Juez Presidente no intervino. Los Jueces Asociados Señores Pimentel, Hernández Matos y Santana Becerra disienten en opinión separada emitida por este último.

—O—

Opinión disidente emitida por el Juez Asociado Señor Santana Becerra en la cual concurren los Jueces Asociados Señores Pérez Pimentel y Hernández Matos

San Juan, Puerto Rico, 18 de noviembre, 1965

Se acusó al apelante de infracción al Art. 29 de la Ley de Narcóticos de Puerto Rico, Ley Núm. 48 de 1959. La acusación le imputó: (1) que en 10 de mayo de 1963 *"tenía en su posesión y dominio la droga narcótica conocida como heroína"*; (2) que vendió la droga narcótica conocida como heroína; y (3) que ocultó y transportó la droga narcótica conocida como heroína.

La evidencia en el récord para sostener la acusación es la siguiente: El apelante se encontró con un agente encubierto a quien tenía como un adicto a drogas y le preguntó a éste si iba a "capiar", capiar heroína o sea conectar estofa, a lo que el agente le contestó que iba a conectar una bolsa, que quería decir a comprar un *"deck"* de heroína. El apelante le dijo que el hombre era Chiqui Kercadó. El agente conocía a Kercadó y fue con el apelante donde aquél y preguntó a Kercadó si tenía estofa. Chiqui contestó que sí pero que no lo conocía. Le dijo entonces que entregara cuatro dólares a Waldemar, el apelante. Eso ocurría en un callejón del barrio Jurutungo de Hato Rey.

"Señor Fiscal:

P—¿Qué usted hizo?

R—Entregué los cuatro dólares que he mencionado a Waldemar.

P—¿Quién habló allí de cuatro dólares de primera intención?

R—Chiqui.

P—¿Por qué mencionó esos cuatro dólares?

R—Eso era lo que costaba el deck.

Testigo:

Le entregúe los cuatro dólares a Waldemar; en mi presencia Chiqui le entregó un deck de supuesta heroína a Waldemar y Waldemar me lo entregó a mi". (R. págs. 13-14.)

"Defensa:

P—Entonces lo cierto fue, testigo, que la transacción usted la llevó a cabo, el que tenía la heroína era Chiqui?

R—Chiqui.

P—Perdóneme, el que tenía el sobrecito ese que se lo entregó a usted era Chiqui?

R—Sí. señor.

P—¿Y qué le dijeron a usted? ¿Qué Chiqui dijo, que no confiaba en usted?

R—Que no me conocía.

P—¿Por eso fue que se hizo la transacción así, porque dijo que no lo conocía?

R—Que no me conocía."

P—¿Entonces el deck o sobrecito ese, Chiqui se lo entregó a Waldemar?

R—A Waldemar.

P—¿Y Waldemar a su vez a usted?

R—A mi.

P—¿Y eso fue a qué hora, testigo?

R—Eso fue a las 12:30 P.M." (R. págs. 16–17.)

El Art. 29 de la Ley de Narcóticos prohibe, entre otras cosas, la tenencia, posesión, traspaso, etc., de una droga narcótica. El Art. 3 dispone que ninguna persona podrá manufacturar, *poseer*, *controlar*, vender, etc. . . . las drogas narcóticas.

No sostenemos que el concepto de posesión en este estatuto sea aquel más riguroso de la posesión civilísima. Puede ser una tenencia. Según se ha resuelto y se apunta en la opinión del Tribunal, el estatuto ha utilizado el concepto en su sentido usual y ordinario, pero aun en tal sentido usual y ordinario la posesión tiene, cuando menos, cierto atributo mínimo que está ausente en su totalidad del récord de este caso.

Al apelante se le imputó en la acusación que *"tenía en su posesión y dominio* la droga narcótica conocida como heroína". La definición más general y menos exigente del concepto de posesión es el "tener uno *en su poder* una cosa". (¹) Al apelante se le imputó por lo tanto que al ocurrir los hechos, *tenía en su poder* la droga. La operación que se llevó a cabo con unidad de acto motivada por una circunstancia allí surgida desmiente, a mi entender, la imputación, tomándola en el mínimo sentido que quiera decir algo. No hay otra prueba ni otros elementos colaterales que el acto en sí. No se trata de una acusación de conspiración, ni hay prueba indiciaria de una posesión-conjunta interesada. Nada en el récord indica

---

(¹) Cassares, *Diccionario Ideológico*, 1963. Cabanellas, *Diccionario de Derecho Usual*, 1954. Vox, 1953. La Real Academia y Webster, 1961, son más rigurosos.

que el apelante tuviera interés personal en la venta. El vendedor y el agente usaron sus manos como vehículo incidental de las mutuas prestaciones, en lo que fue un solo acto de compraventa. Se explica por ello que la Sala sentenciadora como tribunal de derecho, le absolviera de los cargos de venta y transportación. Por las mismas razones nos parece un contrasentido que lo condenara, dentro de esta transacción, por "tener en su poder" la droga. (²)

En *State* v. *Reed*, 170 A.2d 419 (N.J.), un caso normativo, se dice el término poseer según se usa en los estatutos criminales ordinariamente signfica un *control intencional* de una determinada cosa acompañado del conocimiento de su naturaleza. Véase la Monografía que sigue a este caso en 91 A.L.R.2d 810 en donde se analizan los casos ilustrativos en torno al concepto de posesión en narcóticos. (³)

Los casos coinciden en que algún *"quantum"* de control por parte del acusado contiene el concepto de la posesión en el estatuto. Por las constancias del récord, no puedo convenir en que fue probado, con evidencia legalmente suficiente, que el apelante tenía en su posesión y dominio, en su poder, la droga heroína, y por ello disiento del fallo del Tribunal.

---

(²) Quizás más elementos colaterales presentaría el récord para una venta—el apelante como co-autor—a la luz de la definición de *venta* (oferta de la droga) del Art. 2 del estatuto.

(³) Los hechos en *United States* v. *Gregory*, 309 F.2d 536 (2d Cir.), *cert. den.* 373 U.S. 953, aparte de que la posesión era sólo materia evidenciaria para presumir la comisión de otro delito, son a mi juicio distintos. Véase *Hernández* v. *United States*, 300 F.2d 114, 117 y ss (9th Cir.). La situación en *Sutton* v. *State*, 343 S.W.2d 452 (Texas) es también un tanto distinta en conjunto. Aparte del poco tiempo que la acusada tuvo la droga en sus manos—el tiempo no es el factor determinante—hubo otros elementos de juicio en la prueba. Véase en reconsideración el énfasis al hecho de que la acusada le había vendido al agente heroína en otras ocasiones. Son igualmente distintos los hechos en *Fuller* v. *State*, 380 S.W.2d 619 (Texas) y *Huerta* v. *State*, 390 S.W.2d 770 (Texas) que siguen a *Sutton*. Véase en general—33 *Words and Phrases*, Cum. Ann. Pocket— "Possession, Narcotic".