EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* BIEN-
VENIDO VARGAS DELGADO, acusado y apelante.

*Número:* CR-76-129      *Resuelto:* 23 de noviembre de 1976

*Wilfredo Figueroa Vélez*, abogado del acusado; *Roberto Armstrong, Jr., Procurador General Interino*, y *Miguel A. Santana Bagur, Procurador General Auxiliar*, abogados de El Pueblo.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Los hechos relevantes, correctamente resumidos por el Procurador General, son que el 11 de febrero de 1972 la Policía recibió una llamada anónima; que con motivo de la misma el agente Medina Martínez se dirigió a la Barriada Las Monjas, específicamente al final de la Calle Popular, donde había un garage de hojalatería; que pudo notar que había un automóvil afuera del referido garage y que por las condiciones en que se encontraba parecía como si estuvieran trabajando en él; que preguntó quién era el dueño del garage de hojalatería; que luego de identificarse con el Sr. Ismael Sánchez Guzmán, quien resultó ser el dueño del garage, le pidió a éste los papeles de los vehículos estacionados afuera, produciéndolos todos excepto los del vehículo objeto de este recurso, un Dodge Swinger, modelo de 1969, color verde.

También declaró dicho agente, luego de mencionar el hecho de que tenía conocimiento de la existencia de una querella con relación a ese vehículo, que en unión al Sr. Ismael Sánchez Guzmán se llevaron el vehículo hacia la División de Vehículos Hurtados de la Policía de Puerto Rico, en donde una vez allí, se personó una joven identificando el auto como de su propiedad. Dicha joven resultó ser la esposa del apelante. También declaró que tomó la numeración que había en el *dashboard* más otra numeración que el vehículo tiene en otro sitio y resultó que la del *dashboard* pertenecía a un

Dodge del 1968, inscrito a nombre del apelante Bienvenido Vargas Delgado y "la otra numeración apareció a nombre del Señor Berdeguer [*sic*] que era un Dodge-Swinger del 1969, exactamente como habíamos recibido la querella, que el auto había sido hurtado en la calle Marginal de la Baldorioty, en enero"; que luego citó al perjudicado, el señor Verdegué, a la División de Vehículos Hurtados, para que identificara su vehículo como en efecto lo hizo.

Juzgado por tribunal de derecho, previa renuncia al jurado, el acusado Vargas Delgado fue convicto del delito de hurto mayor y sentenciado el 9 de mayo de 1973 a la pena de 1 a 3 años de prisión. En su recurso de apelación formula dos planteamientos contra la sentencia: 1º Que la toma u ocupación del vehículo por la Policía fue ilegal por no basarse en causa probable, y que faltando una orden judicial no podía ser ni incautado ni registrado sin estar presente el acusado; y 2º Que la restitución del vehículo a su dueño antes del juicio viola el derecho del acusado a confrontarse con los testigos y la evidencia en su contra. El apelante no impugna la suficiencia de la prueba en que descansa la convicción que incluye testimonio oral del dueño del taller de hojalatería al efecto de que el acusado le llevó el carro "para pintarlo y arreglarlo." (T.E. pág. 53.)

La historia y propósitos de la Cuarta Enmienda de la Constitución de los Estados Unidos, antecesora y concordante del Art. II, Sec. 10 de la nuestra, (¹) la destacan como

---

(¹) Sec. 10, Carta de Derechos

"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

"No se interceptará la comunicación telefónica.

"Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

"Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."

protección contra invasiones de "la santidad del hogar y la intimidad [*privacies*] de la vida." Su propósito esencial es proteger el derecho a la vida íntima y no el de propiedad. El Tribunal Supremo de los Estados Unidos siguiendo este criterio, consistentemente ha descartado barreras ficticias y procesales erigidas sobre conceptos propietarios. *Warden, Maryland Penitentiary* v. *Hayden*, 387 U.S. 294, 301, 304 (1967). *Schneckloth* v. *Bustamante*, 412 U.S. 218, 242 (1973). ¿Es concebible que quien hurta un automóvil tenga una legítima expectativa de privacidad respecto al mismo? De lo menos que puede calificarse esa expectativa es de teórica y abstracta. " 'El registro de un automóvil es una intrusión mucho menor en los derechos protegidos por la Cuarta Enmienda, que el registro de la persona o de un edificio.' *Almeida-Sánchez* v. *United States*, 413 U.S. 266, 279 (1973). Uno tiene menos expectativa de intimidad (*privacy*) en un vehículo de motor porque se destina a la transportación y raras veces sirve de vivienda o depósito de efectos personales. Un automóvil tiene poca capacidad para escapar a la observación pública. Se desplaza por las vías públicas donde sus ocupantes y su contenido están a plena vista. 'Lo que una persona a sabiendas expone a la vista pública, aun en su propio hogar u oficina, no es sujeto de protección por la Cuarta Enmienda.' *Katz* v. *United States*, 389 U.S. a la pág. 351 (1967); *United States* v. *Dionisio*, 410 U.S. a la pág. 14 (1973). No quiere esto decir que ninguna parte del interior de un automóvil tenga la protección de la Cuarta Enmienda; el ejercicio de un deseo de movilidad no implica, claro está, renuncia del derecho a estar libre de intrusión irrazonable por el gobierno. Pero la medida en que la protección de la Cuarta Enmienda se extiende a un vehículo de motor, ha de determinarse usando como criterio el derecho a la intimidad (*right to privacy*)." *Cardwell* v. *Lewis*, 417 U.S. 583, 590–91 (1974).

■ Predicada la protección contra registros ilegales en el derecho de intimidad de quien la invoca, el apelante que ad-

vino a la posesión mediante hurto del automóvil Dodge, carece de capacidad jurídica e interés legítimo para promover la supresión de la evidencia. El derecho de intimidad (*privacy*) no se da ni se reconoce en un automóvil robado, sin que importe que el acusado no haya admitido el hurto, si éste resulta probado en el juicio.

Además, ninguna orden judicial necesitaba la Policía para incautarse de este automóvil y examinarlo. La notificación del dueño de que lo habían hurtado, su aparición en la calle, sin tablillas, frente a un taller de hojalatería, la notoria frecuencia con que en Puerto Rico se hurtan automóviles y se altera su identidad para encubrir el delito, el hecho de que el encargado del garage pudo producir las licencias de todos los vehículos que allí se encontraban menos la de éste, cuyas llaves tenía y entregó al agente de orden público, son todos elementos que inexorablemente habrían de inducir la fundada creencia en el policía de que se hallaba frente a la evidencia física de un delito de hurto mayor y ninguna orden necesitaba para ocupar el vehículo. Tampoco la necesitaba para arrestar la persona en posesión del mismo. Regla 11 (c) de Procedimiento Criminal. A los fines de la Cuarta Enmienda hay una diferencia constitucional entre hogares y automóviles. *Cady* v. *Dombrowski*, 413 U.S. 433, 439 (1973) *in fine*.

La devolución del automóvil por la Policía a su dueño Verdegué antes del juicio y su entrega por éste a su aseguradora que lo vendió a un negociante en piezas, no afectó la legalidad del juicio. Hubo prueba de que hallándose el automóvil en la División de Vehículos Hurtados de la Policía, se personó allí una joven reclamándolo como de su propiedad y que dicha joven resultó ser la esposa del apelante; que una inspección del vehículo reveló una numeración en el *dashboard* que pertenecía a otro Dodge (1968) registrado a nombre del apelante; que el perjudicado, quien es ingeniero eléc-

trico, identificó el carro como suyo en forma indubitable, (²) y de que el acusado llevó el vehículo sin licencia al hojalatero "para pintarlo y arreglarlo". Aun cuando no se presentara la evidencia objetiva consistente en el vehículo, su *dashboard* con la numeración y su licencia expedida a Verdegué, la evidencia testifical estableció un fuerte caso prima facie que no pudo destruir el acusado y que sostiene la convicción. La descripción e identificación del objeto hurtado no exige en todo caso su presentación en juicio para sostener la acusación. *Pueblo* v. *Monsanto*, 95 D.P.R. 479, 481 (1967). El acusado tuvo amplia confrontación con los testigos en su contra por lo que no se vulneró su derecho sobre tal extremo garantizado por el Art. II, Sec. 11 de la Constitución de Puerto Rico. *Confirmada.*

(²) "P ¿Por qué identificó ese carro usted como el suyo?

"R Empezando porque al el automóvil este ser traído a Puerto Rico, se le rompió la pata del clutch en el interior del vehículo y se le hizo una soldadura en Puerto Rico, la cual reconocí. Además de esto, el automóvil presentaba un cambio, que personalmente yo había cambiado, una serie de cables en la ignición. Estos cables eran los mismos que yo había puesto. El gorro del carburador era diferente al que el modelo trae. Yo había adaptado un gorro de un modelo de un automóvil Corvette del 1967. Además de esto, el automóvil, al ser embarcado en Jacksonville, de Jacksonville a Puerto Rico, se le escribió las letras J.K.X." (T.E. pág. 17.)