EL PUEBLO DE PUERTO RICO
Recurrido

v.

EDUARDO GONZALEZ IGARAVIDEZ
Y ALBERTO GONZALEZ IGARAVIDEZ
Peticionarios

Núm. KLCE-95-00261

San Juan, Puerto Rico, a 31 de mayo de 1995

Panel integrado por su presidente, Juez Rossy García
y los Jueces Martínez Torres y Negroni Cintrón

Rossy García, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

El recurso que nos ocupa interesa la revisión de una resolución emitida el 27 de marzo de

1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, Hon. José A. Torres Caraballo, Juez. Mediante ésta el tribunal denegó una *"Moción Solicitando Supresión de Evidencia"*, presentada por los aquí peticionarios el 2 de diciembre de 1994 al amparo de la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II.█

Encontrándonos en condición de dictaminar luego de un cuidadoso examen del recurso instado a la luz del derecho aplicable y la jurisprudencia interpretativa, resolvemos que el tribunal de instancia dictaminó con corrección y que resulta procedente denegar la expedición del auto solicitado.

Para mayor claridad de nuestro dictamen veamos los hechos pertinentes al aspecto de derecho a que se contrae el presente recurso.

# I

Se desprende de los autos que el 18 de diciembre de 1994 el guardia municipal Henry Rodríguez Martínez se encontraba en labores relacionadas con el cierre de calles en el viejo San Juan, cuando se le acercó un ciudadano desconocido y le informó que había dos individuos en el Paseo La Princesa, de los cuales uno, vestido con pantalón corto y camiseta *("T-Shirt")*, portaba ilegalmente un arma de fuego. El guardia, luego de localizarlos, decidió seguirlos por la vía pública, ello *"a pesar de que al observar a los acusados mientras éstos [sic] se dirigían a su vehículo no pudo notar nada ilegal en su proceder"*. █ Los individuos señalados llegaron hasta una camioneta *"pick-up"* marca Mitsubishi y se montaron en la misma. Al acercarse el guardia a dicho vehículo *"se percató de que uno de los acusados tenía un arma sobre su falda. Acto seguido, los puso bajo arresto y los registró. Al registrar el vehículo encontró un cuchillo tipo militar y en el cenicero del vehículo ocupó una bolsita pequeña de papel encerado conteniendo [sic] picadura de supuesta marihuana y una pipa para fumar con residuos de supuesta marihuana"*. █

A raíz de estos hechos, se radicaron contra los peticionarios cargos por infracciones a los artículos 6, 8 y 4 de la Ley de Armas, así como por infracción al artículo 404 de la Ley de Sustancias Controladas

Luego de haber renunciado los peticionarios a la celebración de la vista preliminar y una vez radicadas las acusaciones correspondientes, éstos presentaron una moción solicitando la supresión de la evidencia que les fue ocupada y que dio base a la radicación de las acusaciones. Fundamentaron la misma en que *"[l]a evidencia en este caso fue ilegalmente ocupada sin orden de allanamiento o registro en violación a la protección constitucional contra registros y allanamiento [sic] irrazonable [sic]"* █ Alegaron asimismo que *"[l]a confidencia recibida por el guardia municipal no cumple con los criterios establecidos para validar la existencia de causa probable; ni autoriza su intervención con los acusados en este caso"*. █

Considerada como fue la moción de supresión presentada y luego de la vista correspondiente, el tribunal de instancia emitió la resolución que es objeto del recurso que nos ocupa declarando la misma no ha lugar, dictamen en el que se ratificó al denegar una moción de reconsideración que fue presentada por los peticionarios.

Inconformes con el dictamen antes indicado los peticionarios instaron el recurso que nos ocupa imputando que el tribunal de instancia incidio al así resolver argumentando que *"la referida evidencia [fue] ocupada en violación a la garantía constitucional contenida en la Sección 10, Artículo [II] de la Constitución del E.L.A. y a la Cuarta Enmienda de la Constitución de los Estados Unidos."* █ Postulan que *"[e]l guardia en este caso no tenía motivos fundados ... para creer que se estaba violando la ley [... ni] se cumple con las exigencias establecidas para la excepción a la norma conocida por "plain view"*. █ Un

análisis de nuestro ordenamiento vigente nos mueve a resolver que los errores imputados no se cometieron y que resulta procedente denegar la expedición del auto solicitado.

## II

El Artículo II, sección 10 de la Constitución del Estado Libre Asociado dispone en lo que resulta pertinente que:

*"[n]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. [...]".*

*[...]*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*
*[...]."*

Como bien se ha expresado, a través de dicha protección constitucional se pretende establecer un límite a las prácticas y procedimientos investigativos, por parte de los agentes del orden público, dirigidos a obtener evidencia física incriminatoria. Olga E. Resumil de Sanfilippo, *Práctica Jurídica de Puerto Rico: Derecho Procesal Penal*, Equity, Orford (1990), Tomo I, §8.1, pág. 203. Para dar virtualidad a dicha garantía, la propia sección 10 del referido Artículo II de nuestra Constitución concluye declarando de manera inequívoca que *" [e]videncia obtenida en violación de esta sección será inadmisible en los tribunales".*

Ahora bien, la determinación relativa a si la intervención de los agentes del orden público es razonable o irrazonable debe hacerse a la luz de las circunstancias específicas y con base en que la disposición constitucional protege a las personas y su interés sobre sus casas, papeles, efectos o lugares y no a éstos como tales. Resumil de Sanfilippo, *supra*, pág. 205. Así, el Tribunal Supremo de los Estados Unidos interpretó en *Katz v. United States*, 389 U.S. 347 (1967), que la Cuarta Enmienda protege a personas, no lugares o cosas, de manera que sólo cuando una persona posee **una expectativa razonable de intimidad** sobre éstos está libre de una intervención irrazonable por parte del Estado. Por lo tanto, la existencia de una *"expectativa razonable de intimidad"* a favor del ciudadano operará, en mayor o menor medida, no sólo en función de la legalidad de los objetos o de la actividad que se realiza, sino del lugar específico en que lleva a cabo la actividad o de la forma en que se encuentra la evidencia incriminatoria.

Por otro lado, la intervención de los agentes del orden público con el ciudadano tiene que basarse, en ausencia de una determinación previa de causa probable para arrestar por parte de un magistrado, en los *"motivos fundados"* para creer que la persona a ser arrestada ha cometido un delito El concepto de *"motivos fundados"* ha sido definido como la posesión de aquella información y conocimiento que llevan a una persona prudente y razonable a creer que el arrestado ha cometido un delito, *Pueblo v. Cabrera Cepeda*, 92 D.P.R. 70, 74 (1965); *Pueblo v. Lafontaine Alvarez*, 98 D.P.R. 75 (1969); *Pueblo v. Alcalá Fernández*, 109 D.P.R. 326, 331 (1980), la que puede ser obtenida, bien a base de la **observación personal** del funcionario mediante cualquiera de sus sentidos o por **información confiable** recibida. Resumil de Sanfilippo, *op. cit.*, pág. 165. De este modo, una confidencia puede servir como fuente de los motivos fundados de un funcionario para intervenir con un ciudadano por la comisión de un delito. Ahora bien, en tales casos y como bien ha expresado el Tribunal Supremo *"siempre [se ha] exigido que la confidencia haya sido corroborada por el agente ya sea mediante observación personal o por información de otras fuentes". Pueblo v. Muñoz Santiago, ___ D.P.R. ___ (1992), 92 J.T.S. 149, a la pág. 10080.*

En este sentido, la determinación relativa a la suficiencia y confiabilidad de una confidencia como base de los motivos fundados habrá de depender de un análisis de la totalidad de las circunstancias, *Pueblo v. Muñoz Santiago, supra,* en cuyo proceso deberán considerarse, entre otros, los criterios indicados en *Pueblo v. Díaz Díaz,* 106 D.P.R. 348, 354 (1977). Estos son:

*"1. que el confidente ha suministrado previamente información correcta;*

*2. que la confidencia conduce hacia el criminal en términos de lugar y tiempo;*

*3. que la confidencia ha sido corroborada por observaciones del agente o por información proveniente de otras fuentes; y*

*4. que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse."* Véase además, *Pueblo v. Acevedo Escobar,* 112 D.P.R. 770, 774 (1982).

Apropiado resulta también señalar que como regla general el Estado debe demostrar que la información provista por un confidente es confiable, ya mediante corroboración o por otros medios. *Pueblo v. Muñoz Santiago, supra,* a la pág. 10081. Véase además, *Pueblo v. Santiago Alicea,* ___ D.P.R.___ (1995), **95 J.T.S. 45**, nota al calce 3, a la pág. 782.

Ahora bien, cuando se trata de confidencias ofrecidas por ciudadanos cooperadores que inopinadamente presencian la comisión de un delito y cumplen con el deber cívico de informar sobre los hechos presenciados a las autoridades, basta con que la información sea razonablemente precisa como para conducir a las autoridades hacia el delincuente en términos de tiempo y lugar para que el oficial del orden público inicie su gestión investigativa. Este último tipo de confidencias recibe trato jurídico distinto a aquellas provistas por un informante que proviene del *"medio criminal",* las cuales tienen que ser corroboradas para garantizar su confiabilidad conforme a los criterios de confiabilidad establecidos en *Díaz, supra,* y su progenie. Como bien se ha expresado, las confidencias provistas por ciudadanos cooperadores deben presumirse confiables. En cuanto a este particular nos ilustra La Fave:

*"Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen who has found himself in the position of a crime victim or witness. As noted by Justice Harlan in United States v. Harris, [403 U.S. 573 (1971)], 'the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis.' "*

Precisamente por razón del trato distinto que recibe la confidencia proveniente de un informante con respecto a la que proviene de un *"ciudadano cooperador",* el Tribunal Supremo ha expresado que *"[l]a Policía de Puerto Rico, en protección de la ciudadanía en general, tiene perfecto derecho a patrullar las vías públicas de nuestro país. Como corolario de ese derecho, tiene la obligación de investigar toda llamada telefónica brindada por dicha ciudadanía referente a posible actividad delictiva".* *Pueblo v. Ortiz Martínez,* 116 D.P.R. 139, 144 (1985).

### III

Dirigiendo nuestra atención a la situación particular del caso que nos ocupa, ningún mérito podemos atribuirle al argumento de los peticionarios relativo a la ausencia de motivos fundados del guardia municipal Henry Rodríguez Martínez para creer que los peticionarios estaban cometiendo o se proponían cometer un delito. Según se desprende de los autos, su intervención con los peticionarios obedeció a una confidencia de un ciudadano cooperador, la cual describía con razonable precisión a los sujetos en términos de vestimenta, localización y

tiempo, lo que claramente justificaba su determinación de seguirlos por la vía pública. Observó así cuando se montaron en el vehículo y estando parado próximo al mismo, donde legítimamente podía estar, observó que *"uno de los acusados portaba un arma sobre su falda"*. Tal observación era suficiente para establecer los *"motivos fundados"* que se requieren para justificar la intervención contra los aquí peticionarios.

Por otra parte y contrario a lo argumentado por los peticionarios, tampoco incidió el tribunal de instancia al validar los arrestos y la consiguiente incautación de evidencia efectuados en este caso al aplicar la doctrina conocida como *"prueba ilegal a plena vista"* *("plain view doctrine")*. Como bien se ha resuelto, se justifica la aplicación de dicha doctrina, como excepción al requisito constitucional de orden judicial previa, cuando están presentes las siguientes circunstancias: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observa la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) la naturaleza delictiva del objeto debe surgir de la simple observación; y (4) debe descubrirse el objeto inadvertidamente. *Pueblo v. Dolce,* 105 D.P.R. 422, 436 (1976).

Dirigiendo nuevamente nuestra atención a los hechos del caso ante nuestra consideración, ninguna duda debe existir con respecto a que el arma de fuego que dio base a la radicación de las acusaciones y cuya supresión solicitan los peticionarios se encontraba a plena vista. Al igual que el guardia municipal que efectuó los arrestos, cualquier ciudadano que hubiese transitado cerca de la camioneta en que se encontraban los peticionarios, pudo haber observado el arma de fuego incautada, por lo que está presente el primero de los criterios antes indicado. En cuanto al segundo, debemos señalar que el mismo debe evaluarse a la luz de lo que expresamos anteriormente con referencia a la *"expectativa legítima de intimidad"* que puede tener un ciudadano frente a las intervenciones del Estado. En este caso, el guardia municipal, ejerciendo su derecho y correlativa obligación de investigar una información sobre la posible comisión de un delito, *Pueblo v. Ortiz Martínez, supra,* siguió a los peticionarios **por la vía pública** hasta situarse en un lugar **accesible a la observación** de la evidencia, *Pueblo v. Luzón,* 113 D.P.R. 315, 326 (1982), lo que le sirvió de motivos fundados para efectuar el arresto. El guardia, como bien señala el tribunal de instancia, *"tenía derecho a estar en la posición desde donde pudo observar el arma sobre la falda del conductor".* En estas circunstancias, y partiendo de la premisa de que por sus características y movilidad inherentes, la expectativa de intimidad es mucho menor en un automóvil que en una residencia, *Pueblo v. Vargas Delgado,* 105 D.P.R. 335, 338 (1977); *Pueblo v. Del Río,* 113 D.P.R. 684, 693 (1982); *Pueblo v. Malavé,* 120 D.P.R. 470, 478 (1988); *Pueblo v. Castro Rosario,* ___ D.P.R. ___ (1990), **90 J.T.S. 7**, a la pág. 7339, el segundo criterio quedó claramente satisfecho. En tercer lugar, tampoco debe haber duda con respecto a que la naturaleza delictiva del arma de fuego que portaba el conductor surgía de la simple observación. Así, se ha resuelto que cuando *"un agente del orden público observa a un ciudadano portar sobre su persona en la vía pública lo que es, o aparenta ser a simple vista un arma de fuego, entran en juego las disposiciones de la Regla 11 de las de Procedimiento Criminal, por cuanto el agente tiene 'motivos fundados' para creer que la persona que porta el arma de fuego ha cometido o está cometiendo un delito grave, independientemente de que sea así o no[...]",* por cuanto el agente tiene el derecho y el deber de *"intervenir, arrestar al ciudadano que así actúa y ocupar el arma de fuego en cuestión hasta que le sea demostrado en forma satisfactoria que el ciudadano estaba autorizado para portarla".* *Pueblo v. Del Río, supra,* a la pág. 690.

Finalmente, concurrimos con las expresiones del tribunal de instancia a los efectos de que *"en este caso el arma no fue descubierta inadvertidamente".* Este hecho, sin embargo, no invalida la actuación del guardia municipal Rodríguez Martínez. Recientemente, el Tribunal Supremo de los Estados Unidos resolvió en *Horton v. California,* 496 U.S. 128 (1989), que si bien es cierto que como regla general la *"inadvertencia"* es una característica de la mayoría de

las incautaciones bajo la doctrina de *"acto ilegal a plena vista",* ésta no es una condición necesaria. ■■ En ese caso, los agentes del orden público incautaron ciertas armas que se encontraban a plena vista mientras diligenciaban una orden de registro en la residencia de Horton, quien era sospechoso de haber perpetrado un robo. El funcionario diligenciante de la orden admitió que, a pesar de que el registro tenía el propósito de encontrar los objetos robados, él estaba interesado en encontrar otra evidencia (no comprendida en la orden) que conectara a Horton con el robo, por cuanto el descubrimiento de las armas de fuego no fue *"inadvertido".* El más alto foro federal razonó, para validar la actuación de los agentes del orden público, que ni la observación ni la incautación de cierta propiedad puede considerarse una invasión de la intimidad en tanto un objeto se encuentra a plena vista:

*"A search compromises the individual interest in privacy; a seizure deprives the individual dominion over his or her person or property. [...]. The "plain view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. **If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy, [...]".** Id.,* a la pág. 133. (Citas y notas al calce omitidas; subrayado nuestro). Véase además, *Pueblo v. Vargas Delgado, supra,* a la pág. 338.

De este modo, el Tribunal Supremo federal en *Horton* concluyó que una vez se determina que la actuación del agente del orden público satisface los criterios relativos al derecho del agente a estar ubicado en el lugar en que observó el acto delictivo, a que el objeto se encontrara efectivamente a plena vista y a la naturaleza delictiva *per se* del mismo, ningún interés adicional comprendido por la Cuarta Enmienda es fomentado *("furthered")* por la exigencia de que el descubrimiento sea *"inadvertido". Id.,* a la pág. 140. Por lo tanto, la intervención del guardia municipal con los peticionarios fue *"razonable".* Dicho análisis y fundamento decisorio resulta de perfecta aplicación al caso que nos ocupa.

Resolvemos en consecuencia que tanto el arresto de los peticionarios como la consiguiente incautación de la evidencia fue uno legítimo por tratarse de *"prueba ilegal a plena vista".* No incidió pues el tribunal al denegar la moción de supresión de evidencia presentada por los peticionarios.

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 167

**1.** Véase Apéndice de la Petición de *Certiorari,* exhibit I, páginas 1-2.

**2.** Véase Resolución, Apéndice de la Petición de *Certiorari,* pág 7.

**3.** *Id.*

**4.** Véase Moción Solicitando Supresión de Evidencia, Apéndice de la Petición de *Certiorari,* pág. 1.

**5.** *Id.,* a la pág. 2.

**6.** Véase Petición de *Certiorari,* pág. 3.

**7.** *Id.*

**8.** El Artículo II, sección 10 de nuestra Constitución procede de la Cuarta Enmienda a la Constitución federal. Esta dispone: *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated [...]".*

**9.** Véase Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11.

**10.** Wayne La Fave, *Search and Seizure: A Treatise on the Fourth Amendment,* 2nd ed., West Publishing Co., St. Paul (1987), Vol. 1, §3.4, pág. 713.

**11.** *Id.,* pág. 712.

**12.** Véase pág. 6 de la Resolución, Apéndice 12 al Recurso de *Certiorari.*

**13.** *"[E]ven though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition". Id.,* a la pág. 130. .