EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ POLANCO MARCIAL, acusado y apelante.

*Número:* CR-67-106     *Resuelto:* 1 de diciembre de 1967

---

*Rafael L. Ydrach Yordán,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Cerca de la medianoche del día 6 de septiembre de 1966 unos agentes del orden público se encontraban en las inmediaciones de la Calle Merhoff, en Villa Palmeras. Habían recibido una confidencia al efecto de que se intentaría la entrega de una colecta y material de bolita a Carlos Palacio Amador[1] y se proponían practicar un allanamiento. Alrededor de las 11:50 P.M., el policía Domingo Rentas Candelaria observó que el apelante José Polanco Marcial conducía una bicicleta de pedal desprovista de luz y en contra del tránsito.[2] Le detuvo, le arrestó e inmediatamente procedió a registrarlo—"Simultáneamente, al decirle que estaba arrestado, lo registré" (T.E. pág. 22)—ocupándole 45 listas de

---

[1] Véase, *Pueblo* v. *Soto Zaragoza,* 94 D.P.R. 350 (1967).

[2] La Sec. 5-1201 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1181, dispone en parte:

"(a) Las disposiciones de esta ley relativas al tránsito de vehículos de motor y a los conductores de los mismos cubrirán a las bicicletas y sus conductores, excepto aquellas disposiciones que por su propia naturaleza no le sean aplicables.

"(b) Además, será ilegal:

"。          .          .          .          .          .          . .          .

"(8) No llevar, durante las horas en que por esta ley se exige, una luz blanca en la parte delantera y una luz o reflector rojo en la parte posterior."

papel de diferentes colores que contenían números de tres cifras seguidos de guión y otras cantidades a la derecha. En efecto, material típico del que se utiliza para el juego de la bolita.

En su testimonio dijo además el agente Rentas que "como yo no lo conocía a él no sabía qué clase de persona era, procedí a registrarlo y a llevarlo al cuartel". (T.E. pág. 23.) Y continuó:

"P. ¿Por eso la pregunta si lo necesario era registrarlo?
R. Después del arresto, sí."

Previamente había declarado que el apelante no se encontraba en estado de embriaguez ni le había opuesto resistencia—"Se le empantalonó a usted? No señor." (T.E. pág. 15.)

Como la única evidencia que se ofreció para conectar a Polanco Marcial con el delito imputádole de posesión de material de bolita fueron las listas ocupadas en virtud del registro reseñado, réstanos considerar si el mismo satisface las exigencias constitucionales, planteamiento que oportunamente se formuló por la defensa.

Presumiendo que el arresto del apelante fuera legal, de los hechos relatados surge meridianamente claro que este registro incidental a un arresto legal fue irrazonable. En *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964), dijimos citando a *Trupiano* v. *United States*, 334 U.S. 699, 708 (1948), que "Un registro . . . que es incidental a un arresto legal ha sido siempre considerado como un derecho limitado. Surge de las necesidades inherentes a las circunstancias que rodean el arresto. Pero debe haber algo más por vía de necesidad que meramente un arresto legal. El mero hecho de que concurra un arresto legal no convalida *ipso factor* un registro . . . sin orden." Elaborando sobre el mismo aspecto hicimos referencia a que el registro se justifica por la necesidad de ocupar armas u otros objetos que puedan utilizarse para evitar a escapar a la detención, así como por la de evitar la

destrucción, desaparición u ocultación de evidencia relacionada con la comisión del delito por el cual se detiene, o para impedir o malograr un ataque o agresión al que practica la detención. Véase, *Pueblo* v. *Riscard,* 95 D.P.R. 405 (1967); cf. *Pueblo* v. *de Jesús Robles,* 92 D.P.R. 345 (1965), comentado en XXXV Rev. Jur. U.P.R. 514 (1966). Como se verá ninguna de las circunstancias concurre en el presente caso. El registro fue irrazonable y es procedente suprimir sus frutos.

Una lectura serena y objetiva del testimonio nos deja la fuerte impresión de que se ha tratado deliberadamente de justificar el registro efectuado sin el correspondiente mandamiento judicial, para lo cual era necesario figurar una violación de ley, aun tan insignificante como las que se le imputan al apelante. Esta perversión de los métodos de investigación y persecución del delito sólo puede merecer nuestro más vigoroso repudio.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 30 de enero de 1967, y se decretará la absolución del acusado apelante.*

El Juez Asociado Señor Belaval no intervino. Los Jueces Asociados Señores Santana Becerra y Rigau disintieron.