EL PUEBLO DE PUERTO RICO, apelado, *v.* HÉCTOR GERARDINO DEL RÍO, acusado y apelante.

*Número:* CR-81-40 *Resuelto:* 29 de diciembre de 1982

*Luis Carbone, Jr.*, abogado del apelante; *Héctor A. Colón Cruz, Procurador General*, y *Américo Serra, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En horas de la tarde del día 20 de diciembre de 1979 y con motivo de una llamada telefónica anónima relacionada con la posible captura de uno de los diez prófugos más buscados en Puerto Rico, el teniente Juan Rivera Cancel, Director de la Sección de Arrestos Especiales de la Policía de Puerto Rico, estableció, en compañía del agente Rubén Soto, una vigilancia desde un auto oficial no rotulado frente al edificio conocido como "Punta Las Marías Guest House" sito en la Calle Emajagua de Santurce, Puerto Rico.

No había transcurrido una hora, cuando ambos agentes pudieron observar que dos personas —una de ellas el ape-

lante Héctor Gerardino Del Río— salieron del edificio principal y se dirigieron hacia un automóvil que estaba estacionado en el área de estacionamiento del edificio. Pudieron observar que el apelante cargaba sobre su persona un revólver en el bolsillo derecho de su pantalón, tipo mahón corto, ya que las *cachas color nácar* de dicho revólver sobresalían del bolsillo. Pudieron observar, además, que el acompañante del apelante llevaba en la cintura un revólver negro con cachas *brown*. El apelante y su acompañante abordaron el referido vehículo de motor y al ir a pasar por el lado del carro oficial no rotulado en que se encontraban los agentes, éstos se desmontaron del mismo, se identificaron como agentes del orden público, y le ordenaron al apelante, quien era el conductor del auto, que se detuviera, lo cual hizo.

El agente Soto se acercó al vehículo del apelante y le preguntó a éste si tenía licencia para portar armas, a lo cual éste contestó que no. Soto entonces le informó al apelante que estaba arrestado y le ordenó que se desmontara del vehículo. Al éste así hacerlo, el agente Soto procedió a registrarlo, ocupándole en un bolsillo de su pantalón un cigarrillo de marihuana y la suma de $135 en efectivo, pero no encontró en ese momento el revólver con cachas de nácar que le había observado en el bolsillo derecho del pantalón al apelante. Éste fue esposado por el agente del orden público, quien pudo notar que el apelante miraba hacia un maletín con el cierre de cremallera de arriba abierto, que se encontraba en el medio de los dos asientos delanteros del vehículo. El agente Soto procedió a incautarse, a través de la ventanilla abierta del auto, del referido maletín y dentro del mismo ocupó un revólver niquelado con *cachas de nácar* y el número de serie mutilado, una envoltura de papel con picadura de marihuana, una balanza pequeña, bandas de envolver dinero y la suma de dinero en efectivo de ocho mil cuatrocientos cuarenta dólares ($8,440).

El apelante —un veterano pensionado— fue acusado de

sendas infracciones a los Arts. 6, 8 y 11 de la Ley de Armas de Puerto Rico y por una infracción a la Sec. 404 de la Ley de Sustancias Controladas. [1]

Declarada sin lugar una moción de supresión de evidencia por el Juez Superior —Hon. Elpidio Batista— que presidió el proceso y convicto que fuera el apelante por el Jurado que intervino en el mismo en cuanto a los delitos graves por los cuales fuera procesado —habiendo sido igualmente convicto por el delito menos grave por tribunal de derecho— el apelante nos hace tres señalamientos por los cuales entiende que las referidas condenas deben ser revocadas, a saber:

I. Erró el Tribunal de Instancia al declarar Sin Lugar una Moción de Supresión de Evidencia la cual se ventiló por acuerdo de las partes dentro del Juicio.

II. El Fiscal a cargo de sostener la acusación al estar esbozando su informe final al jurado comentó el que la defensa no utilizara el testimonio de un testigo anunciado y renunciado por ésta. Este comentario, por su propia naturaleza, lesionó los derechos del acusado de permanecer en silencio y de que no tiene obligación de presentar testimonio de defensa alguno. [[2]]

III. El veredicto de culpabilidad emitido por el jurado es contrario a la prueba y a derecho.

En relación con el primer señalamiento, el apelante en su alegato sostiene, entre otras cosas: (*A*) que el mero hecho de haber observado que el apelante y su acompañante portaban sobre su persona, a plena vista, armas de fuego no le daba motivos fundados a los agentes para creer que dichas personas estaban cometiendo un delito en su presencia —portar un arma sin la debida licencia— y por lo tanto no

---

[1] En cuanto al acompañante del apelante, éste no fue acusado por el magistrado que intervino en el caso, por el fundamento, entre otros, de que tenía licencia para tener y poseer y para portar armas en relación con el revólver que portaba en la cintura.

[2] El convicto, en apelación, renuncia a este segundo planteamiento.

podían detenerlos ni arrestarlos sin una orden de arresto previa; (*B*) (citando a *Delaware* v. *Prouse*, 440 U.S. 648 (1979)) que detener un vehículo y sus ocupantes constituye una incautación (*seizure*) tanto bajo la Cuarta como bajo la Undécima Enmiendas de la Constitución de los Estados Unidos de Norteamérica, aun cuando la detención sea breve y el propósito de la misma sea limitado; (*C*) que aun presumiendo, a los fines de la argumentación, que los agentes tenían motivos fundados para creer que el apelante y su acompañante estaban cometiendo un delito en su presencia y que el hecho de la detención del auto no constituyó una incautación y, por lo tanto, la detención o el arresto fue legal, sostiene el apelante que el registro de su persona y el registro del carro —específicamente del maletín— fue irrazonable; y (*D*) que los agentes, ante los hechos particulares del caso, por ley tenían la obligación de obtener una orden de allanamiento de un magistrado para poder registrar el maletín en cuestión y el auto.

I

—*A*—

El planteamiento del apelante se puede resumir de la siguiente forma: los agentes del orden público no tenían motivos para arrestarlo, ya que —aparte de que él portaba sobre su persona, a plena vista, un arma de fuego, hecho que, según el apelante, no le da el derecho en Puerto Rico a un policía de intervenir con una persona que así actúa— ni él ni su acompañante incurrieron en conducta delictiva alguna en presencia de dichos agentes.

■ Se hace innecesario el que resolvamos el referido planteamiento a base de la jurisprudencia de este Tribunal a los efectos de que, *ya en la etapa del juicio*, "[e]n casos de portación o posesión ilegal de armas de fuego el fiscal no viene obligado a probar que el acusado no tenía licencia con tal fin, cuando se ha alegado tal hecho en la acusación y se ha probado la portación o posesión del arma, ya que en ellos

surge la presunción de portación ilegal y es al acusado a quien incumbe destruir tal presunción", [3] doctrina que en diversas ocasiones ha sido objeto de ataque, por cuanto se ha alegado que la misma puede estar en conflicto con la presunción de inocencia que acompaña al acusado durante todo el proceso y con el derecho constitucional que tiene todo acusado a presentar o no presentar prueba y a declarar o no declarar durante el proceso a que sea sometido, cuestión, sin embargo, que no es necesario considerar ni discutir en el presente caso.

■ Es sumamente importante que mantengamos presente el hecho de que en nuestra jurisdicción la posesión y/o portación de un arma de fuego *no* es un derecho y sí un privilegio; en otras palabras, es una "actividad" controlada o restringida por el Estado. Sobre este punto no hay que abundar mucho; ello surge con meridiana claridad de una simple lectura de las disposiciones de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, según enmendada. 25 L.P.R.A. secs. 411–454. [4]

■ Específicamente en relación con la portación de un arma de fuego tenemos que en Puerto Rico, únicamente están autorizadas a portar armas de fuego aquellas personas enumeradas en el Art. 20 de la referida Ley de Armas, 25 L.P.R.A. sec. 430, y aquellas a las cuales le sea concedida una licencia para así hacerlo por la Sala del Tribunal Superior de Puerto Rico correspondiente al domicilio del solicitante, según lo dispone y regula el Art. 21 de la Ley. 25 L.P.R.A. sec. 431.

---

[3] Véanse, entre otros, *Pueblo* v. *Cortés del Castillo*, 86 D.P.R. 220, 235 (1962); *Pueblo* v. *Pacheco*, 78 D.P.R. 24, 30 (1955); y *Pueblo* v. *Segarra*, 77 D.P.R. 736, 737–738 (1954).

[4] Prueba adicional de lo arriba expresado lo constituye la enmienda sufrida por la referida Ley Núm. 17 mediante la Ley Núm. 8 de 31 de marzo de 1980: se adiciona el Art. 21B a la Ley, el cual le impone el deber a todo tribunal que conceda o revoque una licencia para portar armas el enviar copia certificada de la resolución correspondiente al señor Superintendente de la Policía de Puerto Rico semanalmente.

■ De manera, pues, que en Puerto Rico, distinto a algunos estados del oeste de Estados Unidos de América en donde las personas pueden portar abiertamente un arma de fuego, la regla general es de restricción o control en materia de posesión y/o portación de armas de fuego, constituyendo la portación autorizada la excepción a dicha regla general.

■ Siendo ello así, ante una situación de hechos como la del presente caso. en que un agente del orden público observa a un ciudadano portar sobre su persona en la vía pública lo que es, o aparenta ser a simple vista, un arma de fuego, entran en juego las disposiciones de la Regla 11 de las de Procedimiento Criminal, por cuanto el agente tiene "motivos fundados" para creer que la persona que porta el arma de fuego ha cometido o está cometiendo un delito grave, independientemente de que así sea o no. En consecuencia, el agente del orden público tiene el derecho —y hasta el deber— de intervenir, arrestar al ciudadano que así actúa y ocupar el arma de fuego en cuestión hasta que le sea demostrado en forma satisfactoria que el ciudadano estaba autorizado para portarla. [5]

Resolver lo contrario, a nuestro juicio, sería funesto para Puerto Rico; aparte de que la actuación de los agentes del orden público a esos efectos ni molestará, ni incomodará, ni le causará problemas al ciudadano decente y obediente de la ley, sólo al delincuente.

—*B*—

El caso de *Delaware*, supra, pág. 648, citado por el apelante con el propósito de demostrar que la detención del vehículo en el presente caso constituyó una incautación tanto bajo la Cuarta como bajo la Undécima Enmiendas de

---

[5] Sobre qué constituye "motivos fundados", véanse: *Pueblo* v. *Cabrera Cepeda*, 92 D.P.R. 70; 73 (1965); *Pueblo* v. *Lafontaine Álvarez*, 98 D.P.R. 75, 81 (1969); *Pueblo* v. *Alcalá Fernández*, 109 D.P.R. 326, 331 (1980); y C. W. Fricke y A. L. Alarcon, *California Criminal Procedure*, 7ma ed., California, Legal Books Corp., 1967, pág. 22.

la Constitución de los Estados Unidos de América es clara-
mente distinguible de los hechos del caso que nos ocupa.

En el citado caso de *Delaware*, se efectuó, por parte de
agentes del orden público, la detención de un automóvil sin
motivo o sospecha alguna de que su conductor estuviera
involucrado en la comisión de delito público alguno, ya que
la detención se efectuó, según el agente, con el propósito de
llevar a cabo un examen rutinario de la licencia del conduc-
tor y la del carro. El honorable Tribunal Supremo de los
Estados Unidos, como sabemos, resolvió que ello constituía
una actuación irrazonable bajo la Cuarta Enmienda de la
Constitución federal.

En el presente caso la detención del automóvil por parte
de los agentes del orden público se debió precisamente a lo
ya relatado: habían observado que sus ocupantes portaban
armas de fuego. Esto causa que los agentes intervengan y
arresten al apelante, actuación que tenían derecho a rea-
lizar dichos agentes, según hemos resuelto previamente.

### —C y D—

Argumenta el apelante que, independientemente de la
legalidad de la actuación de los agentes del orden público al
intervenir con él y arrestarlo —legalidad que presume a los
fines de la argumentación— el registro de su persona y el
del automóvil, específicamente el del maletín, fue irrazona-
ble y que era deber de los agentes, en relación con el regis-
tro del automóvil, el obtener una orden de allanamiento
previa.

El registro de la persona del apelante fue incidental y
contemporáneo al arresto realizado, el cual estuvo plena-
mente justificado. Obsérvese que el agente del orden
público, una vez arresta al apelante, se percata de que éste
ya no tiene en su bolsillo el arma de fuego que el agente
había observado. Obviamente estaba indicado el registro de
la persona del apelante en busca de la misma. *Pueblo* v.
*Soto,* 77 D.P.R. 206 (1954).

 El registro del maletín que se encontraba dentro del automóvil, en el medio de los dos asientos delanteros, fue igualmente válido y razonable. No era necesario el que los agentes obtuvieran una orden de un magistrado para así realizarlo. Hemos resuelto en innumerables ocasiones que un registro incidental y contemporáneo a un arresto legal no necesariamente está limitado a la persona del arrestado, sino que se extiende al área bajo su control y alcance inmediatos. *Pueblo* v. *Riscard*, 95 D.P.R. 405 (1967), y *Pueblo* v. *Cruz Rivera*, 100 D.P.R. 345 (1971). Dicha situación, hemos resuelto, encuentra su justificación en la necesidad de: (1) ocupar armas de fuego que se pueden encontrar ocultas en el área inmediata al sitio en donde se realiza el arresto, las cuales pueden ser utilizadas para agredir a los agentes o para intentar escapar; y (2) ocupar evidencia que pueda ser destruida. *Pueblo* v. *Costoso Caballero*, 100 D.P.R. 147 (1971); *Pueblo* v. *Polanco Marcial*, 95 D.P.R. 470 (1967).

Es cierto que se podría argumentar que la posibilidad de que el apelante pudiera utilizar el arma de fuego, que se encontraba en el maletín, en contra de los agentes o con el propósito de escapar era mínima en vista de que él fue esposado. Ese hecho por sí solo, sin embargo, no elimina la posibilidad de que aun esposado pudiera así hacerlo. Como dijéramos en *Pueblo* v. *De Jesús Cordero*, 101 D.P.R. 492, 499–500 (1973):

> Una noción básica de prudencia y cautela justifica plenamente la acción realizada sin solución de continuidad, *de una vez registrados los acusados y puestos bajo vigilancia de un policía en el coche celular,* proceder al registro del automóvil como incidente coetáneo al arresto. Viciado de bizantinismo está el argumento de que luego de arrestados los apelantes debió la policía iniciar el trámite de obtención de un mandamiento judicial antes de registrar el automóvil; conduce a la pretensión absurda de que el registro debió llevarse a cabo en la inmediata presencia y bajo supervisión de los detenidos y éstos en plena libertad de movimiento para hacer armas contra los agentes del orden público o escapar. La acción rápida,

el registro en el sitio del incidente por los agentes, era evidentemente necesaria ante la posibilidad de que los acusados intentaran el uso de fuerza contra la policía bien para librarse del arresto o desaparecer las armas que habían escondido en el vehículo y en evitación además de que terceras personas lograran acceso a la evidencia criminosa y la ocultaran. (Énfasis suplido.)

█ Por último, debemos recordar lo expresado en *Pueblo* v. *Vargas Delgado*, 105 D.P.R. 335, 338 (1976), a los efectos de que "El registro de un automóvil es una intrusión mucho menor en los derechos protegidos por la Cuarta Enmienda, que el registro de la persona o de un edificio". Que esta es la tendencia moderna, queda demostrado por dos recientes decisiones del honorable Tribunal Supremo de los Estados Unidos de América: *New York* v. *Belton*, 453 U.S. 454 (1981), en donde el referido Tribunal determinó que era legal y razonable el registro de la guantera del automóvil, por ser un registro incidental y contemporáneo al arresto legal de uno de los ocupantes del automóvil; y el caso de *United States* v. *Ross*, 655 F.2d 1159 (1981), en donde se resolvió que el registro del *baúl* de un automóvil estaba justificado en vista de que la Policía, actuando a base de una información de un confidente confiable de que había un individuo vendiendo drogas que se encontraban en el referido baúl, al llegar al sitio y con posterioridad al arresto del individuo encontraron un arma de fuego al registrarlo.

## II y III

Habiendo renunciado el apelante, en apelación, al segundo señalamiento de error, sólo nos quedaría discutir el tercero de ellos. No obstante, resulta ser innecesario por razón de que el mismo es obviamente inmeritorio, ya que la prueba desfilada justifica plenamente los veredictos de culpabilidad rendidos por el Jurado.

*Puesto que no se han cometido los errores señalados, se emitirá Sentencia en que se confirmen las sentencias apeladas.*

694

El Juez Asociado Señor Negrón García concurre en el resultado sin opinión.

