Pueblo de Puerto Rico, peticionario, *v.* Alex Corraliza Collazo y Gilberto Corraliza Viruet, acusados y recurridos.

*Número:* CE-86-816 *Resuelto:* 6 de mayo de 1988

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Luis F. Abreu Elías,* abogado de los recurridos.

El Juez Asociado Señor Ortiz emitió la opinión del Tribunal.

Ante el Tribunal Superior de Puerto Rico, Sala de San Juan, fueron presentados pliegos acusatorios mediante los

cuales el Ministerio Público le imputó al aquí recurrido, Sr. Alex Corraliza Collazo, infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, por hechos ocurridos el 13 de septiembre de 1985. En dicha fecha el agente de la Policía Manuel Gómez Acevedo ocupó sobre la persona del recurrido un revólver Smith and Wesson, Calibre 38, cargado con cinco (5) balas y tres (3) balas adicionales en su bolsillo.

El 19 de febrero de 1986 la defensa presentó una moción de supresión de evidencia en la cual alegaba, como *único* fundamento para dicha solicitud, "[q]ue el registro de [*sic*] allanamiento y ocupación fue ilegal; no existía causa probable para creer que el imputado estuviese cometiendo un delito en presencia de la policía, ni estaba cometiendo un delito en su presencia". Anejo I, pág. 1.

La vista sobre dicha moción se celebró el 21 de octubre de 1986. La única evidencia presentada en dicha vista fue el testimonio del agente Manuel Gómez Acevedo quien, en síntesis, declaró que el 13 de septiembre de 1985, en horas de la mañana, le pasaron una nota por radioteléfono, mientras iba patrullando con su compañero Minobel González, informándoles que estaba ocurriendo un asalto en los almacenes de la Pepsi-Cola en Sabana Llana. Él se dirigió al lugar de los hechos y allí le describieron los asaltantes como que eran jóvenes blancos, de pelo lacio y *baby face*. El agente decidió dar un patrullaje por el lugar a ver si daba con ellos. Testificó, además, que al entrar en la Calle General Valero observó a un individuo que cumplía con la descripción y que caminaba de frente a la patrulla en la acera del lado derecho. A una distancia de alrededor de ventisiete (27) pies tuvo la oportunidad de observar que del bolsillo izquierdo delantero del pantalón le sobresalía un mango parecido al de un revólver con cachas color *brown*. Al ver a los agentes, dicha persona trató de cubrir el mango que sobresalía con un paraguas. Procedió a detener la patrulla, a detener al indivi-

duo y ocupó el revólver. Al preguntarle si poseía licencia de portar armas contestó en la negativa, por lo que procedió a arrestarlo.

Sin exponer fundamento alguno, el tribunal suprimió la evidencia.[1] Recurre ante nos el Procurador General.

Emitimos orden a la parte recurrida para que mostrara causa por la cual no deberíamos expedir el auto y revocar la decisión del tribunal de instancia, por haber éste cometido error al declarar con lugar la moción de supresión de evidencia, contrario a lo resuelto en casos tales como el de *Pueblo v. Del Río*, 113 D.P.R. 684 (1982). El recurrido ha comparecido. A los fines de decidir, ordenamos la transcripción de la evidencia. Vista la prueba, revocamos la decisión de instancia.

Fundamenta su contención el recurrido en dos (2) argumentos principales. En primer lugar sostiene que:

> Desde que lo ve no se podía ir para su casa o para donde hubiese querido. Esto se llama arresto. La posterior detención y registro fueron posteriores al arresto. Después del registro le hace las advertencias. Alegato adicional del recurrido, pág. 4.

En segundo lugar alega que:

> La "base para el arresto" o la "causa probable" para el arresto fue la información anónima recibida por la policía a los efectos de que unos jóvenes, blancos, baby face habían cometido el asalto. Estaba arrestado desde que lo vio. Alegato adicional del recurrido, pág. 4.

Este enfoque confunde la razón para la intervención. Parte del supuesto erróneo de que el arma fue descubierta por razón de un registro. Ese no es el caso. El arma fue detectada por estar a vista abierta sin necesidad de registro, allanamiento o incautación. Estaba expuesta a la vista de

---

[1] La omisión del tribunal de exponer fundamentos dificulta nuestra función revisora e hizo necesario ordenar la transcripción. La excusa dada por la magistrado, exceso de trabajo, es inaceptable.

cualquiera que pasara junto al recurrido. Después que el policía aprecia visualmente su existencia y conoce que Corraliza Collazo no tiene licencia que le autorice su portación es que, en el descargo razonable de sus funciones, lícitamente lo arresta y ocupa el arma. *Pueblo ex rel. F.J.M.R.*, 111 D.P.R. 501, 503 (1981); *Pueblo v. Fernández*, 65 D.P.R. 497, 499–500 (1945).

 Según el testimonio no controvertido del agente Gómez Acevedo[2] los hechos se dividen en dos (2) etapas. Primero, la llamada sobre el asalto a la Pepsi-Cola, a la cual acuden los policías, y la observación de un individuo que respondía a la descripción brindada. Sobre esta primera etapa recientemente hemos señalado que:

La Policía de Puerto Rico, en protección de la ciudadanía en general, tiene perfecto derecho a patrullar las vías públicas de nuestro país. Como corolario de ese derecho, tiene la obligación de *investigar* toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva. Los dos agentes del orden público envueltos en el presente caso, en cumplimiento de su deber, así actuaron. Al acercarse al lugar específico indicado no sólo pudieron corroborar la presencia de dos individuos que respondían exactamente a la descripción brindada, sino que pudieron percatarse del hecho singular adicional de que estos individuos, al notar la presencia del auto patrulla, comenzaron a correr a la misma vez y en la misma dirección. Si bien es cierto que, hasta ese momento, las circunstancias apuntadas no eran suficientes para proceder al arresto de dichas personas al amparo de las disposiciones de la Regla 11 de las de Procedi-

---

[2] El contrainterrogatorio de la defensa se concentró en cuestionar la descripción de los asaltantes (quién la había dado y si se hizo constar en los informes) y en si podía o no el recurrido haberse ido o no desde que el agente se percata que responde a la descripción. Como de la transcripción de la evidencia no surgen los fundamentos que utilizó la juez de instancia, debemos partir de la premisa que el testimonio del agente le mereció crédito. O sea, que suprimió la evidencia a base de su interpretación del derecho aplicable.

miento Criminal, no es menos cierto que dichas circunstancias, por ser altamente peculiares, exigían que los referidos agentes del orden público continuaran la gestión investigativa legítima comenzada, *sobre todo cuando consideramos que su actuación se limitó a seguir a los individuos en su patrulla por una vía pública en la investigación de la confidencia recibida.* Cf. *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348 (1977). (Énfasis suplido.) *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985).

Así lo hicieron los agentes. Bajo los hechos aquí presentes es irrelevante quién dio la información y cómo advino a dicho conocimiento. *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988). La segunda etapa de los hechos ocurre cuando la Policía se percata de que el recurrido porta un arma de fuego. Aquí, al igual que en el caso de *Pueblo v. Ortiz Martínez*, supra, la intervención con la persona en sí sólo ocurre una vez los agentes del orden público tienen "motivos fundados" para arrestarlo; esto es, una vez los funcionarios públicos se percatan de la portación, por parte del recurrido, de un arma de fuego en la vía pública. Ya en *Pueblo v. Márquez*, 36 D.P.R. 265 (1927), este Tribunal había dicho que, si una persona deja ver un arma a la vista de un policía, tal hecho tiene el efecto de establecer la comisión de un delito en su presencia y puede éste legalmente proceder a su arresto. Estos criterios fueron ratificados en *Pueblo v. Del Río*, supra. Allí señalamos que:

> Siendo ello así, ante una situación de hechos como la del presente caso en que un agente del orden público observa a un ciudadano portar sobre su persona en la vía pública lo que es, o aparenta ser a simple vista, un arma de fuego, entran en juego las disposiciones de la Regla 11 de las de Procedimiento Criminal, por cuanto el agente tiene "motivos fundados" para creer que la persona que porta el arma de fuego ha cometido o está cometiendo un delito grave, independientemente de que así sea o no. En consecuencia, el agente del orden público

tiene el derecho —y hasta el deber— de intervenir, arrestar al ciudadano que así actúa y ocupar el arma de fuego en cuestión hasta que le sea demostrado en forma satisfactoria que el ciudadano estaba autorizado para portarla. *Pueblo v. Del Río*, supra, pág. 690.

Por existir motivos fundados para el arresto e incautación del arma de fuego, *se revoca la resolución del Tribunal Superior que suprimió la evidencia ocupada y se devuelve el caso para que continúen los procedimientos.*

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión.