*653 TEXTO COMPLETO DE LA SENTENCIA
Mediante escrito de apelación, la señora Lillian E. Medina Hernández recurre ante nosotros solicitando que revoquemos el veredicto dictado en su contra por un jurado el 3 de febrero de 2004 y su correspondiente Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 11 de marzo de 2004. [1] Los mismos corresponden a una infracción al Artículo 8 (portación sin licencia de arma de fuego cargada) de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, según enmendada. [2]
Contando con el beneficio de la comparecencia de la Procuradora General y los extensos volúmenes que comprenden la transcripción de la prueba presentada durante el juicio, CONFIRMAMOS el veredicto y la Sentencia impugnada. Veamos a continuación un breve resumen de los hechos fácticos y procesales que surgen de los autos.
I
Por los hechos acaecidos el 19 de noviembre de 2000 en la Urbanización Isabel La Católica en Aguada, Lillian E. Medina Hernández fue acusada por el delito de asesinato en primer grado y por una infracción al Artículo 8, sobre portación sin licencia de un arma de fuego cargada, de la Ley de Armas de 1951. [3]
El señor Antonio Medina regresó esa noche a su hogar, entre las 8:00pm y 9:00pm, y encontró el cuerpo de su esposa, Lydia Hernández Soto, yaciendo en el piso de su dormitorio. Éste procedió a llamar al sistema de emergencia 9-1-1 para solicitar asistencia médica para la víctima, ya que la misma no tenía pulso ni estaba respirando. Aproximadamente a las 11:00 p.m., la agente Magaly Souchet del Negociado de Crímenes Violentos acudió al lugar de los hechos para realizar la correspondiente investigación. Cuando entró al hogar de la víctima, se percató de unos mensajes escritos en lápiz labial en una pared del pasillo y en el espejo del dormitorio de la apelante. Los mismos leían: “Lillian te voy a matar con lo que robaste a tu papá” y “Lillian tienes suerte cuídate.” [4]
Luego de investigar el hogar, la agente Souchet se dirigió al cuartel en horas de la madrugada del día siguiente, 20 de noviembre de 2000, y allí entrevistó al señor Medina y a la apelante. Durante esa entrevista, éste admitió que era dueño de un arma de fuego sin licencia para poseer ni portar. Le informó a la agente Souchet que guardaba dicha arma en su vehículo personal, pero que la misma había desaparecido. Además, le indicó que su hija, la apelante, había tenido problemas con un tal Will en la escuela. Por otro lado, esta última declaró no tener problema alguno.
El 21 de noviembre de 2000, la agente Souchet entrevistó a varios compañeros de clase de la apelante en su escuela. Entre otros, ésta entrevistó al joven conocido como Will y a Christian Barreto. Ese día pudo confirmar que la apelante y Will habían tenido problemas porque alegadamente ésta le informó a sus maestros que él vendía drogas en la escuela. El día siguiente, durante el entierro de la víctima, la apelante y su tía, Felipa Medina, se acercaron a la agente Souchet porque la menor quería hablar. [5] En ese momento, se dirigieron al cuartel de Aguadilla donde la apelante declaró que era adicta a la cocaína y al Xanax; que Will le proveía dichas *654 drogas; que había acumulado una deuda; y que éste la amenazaba constantemente para cobrar dicha deuda. Posteriormente, ésta realizó declaraciones similares ante la Procuradora de Menores Maria del C. Aymat. [6] Durante esa entrevista, la apelante admitió que se llevó a la escuela el arma de fuego que su papá, el señor Medina, guardaba en su vehículo; que era su intención enfrentar a Will con la misma para que éste cesara de cobrarle la alegada deuda; que alguien le robó el arma de fuego de su bulto; que Will era el único que sabía que ella tenía la referida arma; y que sospechaba que éste mató a su madre.
Ese mismo día, la agente Souchet localizó a Will y lo llevó, junto a su madre, a la Oficina de la Procuradora de Menores. Cuando le informaron a la apelante que habían detenido a Will, ésta retractó la versión de los hechos que había declarado anteriormente. Admitió que había mentido y que Will no estaba involucrado con los hechos. En ese momento, las autoridades le hicieron a ésta las advertencias legales y se las entregaron en un formulario escrito. Tanto el señor Medina como la apelante leyeron y firmaron dicho formulario para certificar que entendía las advertencias que les habían hecho anteriormente. Luego de las advertencias, la apelante procedió a ofrecer una segunda versión de los hechos. Esta vez, dijo que en junio del 2000 le robó una tarjeta de crédito a su padre y con la misma retiró $600.00; que contrató con ese dinero al señor Ezer Muñiz para que matara a sus padres; y que al principio éste no cumplió con lo acordado y no devolvió el dinero a pesar de sus insistencias. A pesar de esto, dijo que la noche de los hechos dejó la puerta de su casa abierta y le entregó a Ezer una toalla. En esta nueva versión, la apelante sospechaba que Ezer había matado a su madre.
La agente Souchet investigó esta versión de los hechos. Entrevistó a Ezer Muñiz y confirmó que éste había recibido $600.00 de la apelante para matar a sus padres. No obstante, Ezer alegó que su intención nunca fue cumplir con lo acordado, sino más bien quedarse con el dinero. Además, éste presentó evidencia de que el día de los hechos se encontraba en otro pueblo con sus padres. Cuando la agente Souchet le informó el resultado de su investigación al fiscal Esparra, éste inmediatamente retiró la oferta de inmunidad que le habían extendido a la apelante. Fue en ese momento que ésta dijo frente a todos “.. .que se había cansado de mentir, que iba a decir la verdad, que si (sic), sí lo hice que yo maté a mi mamá.” [7] Además, alegó que su compañero de clases Christian Barreto la ayudó a deshacerse del arma de fuego y del lápiz labial que utilizó para escribir los mensajes en el lugar de los hechos.
Con esta nueva información, la agente Souchet entrevistó nuevamente a Christian Barreto. Esta vez, Barreto admitió que ayudó a la apelante a deshacerse del arma de fuego y de un lápiz labial. Además, le indicó a la agente los lugares donde lanzó dichas cosas. Gracias a sus declaraciones, la Policía pudo recuperar ambas piezas de evidencia.
Celebrado el juicio de autos, el jurado declaró a la apelante no culpable del delito de asesinato en primer grado y culpable de la infracción al Artículo 8 de la Ley de Armas del 1951. Luego de varias incidencias procesales, el tribunal sentenciador celebró una vista de impugnación del informe pre sentencia solicitada por la defensa. Ambas partes también argumentaron la posible existencia de atenuantes y agravantes que pudieran afectar la sentencia final. Durante la continuación de dicha audiencia, la defensa solicitó la suspensión de la vista y que el juez de instancia tomara conocimiento judicial de la edad de la apelante y de la ausencia de antecedentes penales. El Ministerio Público no objetó dicha petición. Ante esto, el juez de instancia determinó que la vista evidenciarla era inoficiosa e innecesaria por no existir controversia real sobre un hecho material que justificara la presentación de prueba. [8]
El 11 de marzo de 2004, el Tribunal de Primera Instancia emitió la Sentencia ante nuestra consideración. Dicho foro determinó que existían agravantes que justificaban la imposición de la pena más severa que permitía el delito imputado. Por tanto, condenó a la apelante a 10 años de reclusión carcelaria y denegó el beneficio de Sentencia Suspendida. Inconforme, Lillian Medina acudió oportunamente ante nosotros mediante recurso de apelación. En su alegato, planteó que el tribunal primario cometió los siguientes errores:
*655 “A. Erró el Tribunal de Primera Instancia al sentenciar a la apelante sin aplicar a (sic) las disposiciones de la ley más beneficiosa para ésta. Al así actuar, el Tribunal violentó las claras disposiciones del Art. 4 del Código Penal [del 1974], 33 L.P.R.A. See. 3004.
B. Erró el Tribunal de Primera Instancia al imponer la sentencia con agravantes. De la sentencia emitida el 11 de marzo de 2004, surge con claridad que las circunstancias agravantes específicamente consideradas por el Tribunal se relacionan todas a los hechos relativos al asesinato en primer grado, delito por el cual el jurado, luego de aquilatar la prueba, rindió veredicto de no culpable.
C. Erró el jurado al encontrar culpable a la aquí apelante por infracción al Art. 8 de la Ley de Armas [del 1951] en virtud de una prueba a todas luces insuficiente en derecho.”
Luego de una larga trayectoria apelativa en la cual surgieron múltiples situaciones relacionadas con la transcripción de la prueba oral presentada durante el juicio de autos, el caso ante nuestra consideración quedó perfeccionado el 21 de julio de 2009 con la presentación del alegato del Estado representado por la Oficina de la Procuradora General.
A continuación, consideramos el tercer señalamiento de error imputado por la apelante, relacionado con la suficiencia de la prueba y el veredicto emitido por el jurado, por entender que los demás señalamientos están subordinados a este último. Adelantamos que los argumentos presentados por la apelante, con relación a todos sus señalamientos de error, no nos han convencido. Veamos ahora el derecho que fundamenta nuestra determinación.
n
La apelante nos plantea, en su tercer señalamiento de error, que el jurado incidió al declararla culpable de infringir el Artículo 8 de la Ley de Armas del 1951. En síntesis, ésta alega que la única prueba que la vincula al arma de fuego son los testimonios de la agente Souchet y de Christian Barreto. En otras palabras, la apelante impugna la credibilidad de dichos testimonios y la valoración que a los mismos les dio el jurado. Por otro lado, la apelante alega que sus admisiones durante el interrogatorio efectuado por las autoridades, el 22 y 23 de noviembre de 2000, eran inadmisibles porque éstas le violaron su derecho constitucional a no autoincriminarse. Luego de examinar estos planteamientos, colegimos que ninguno nos persuade como para intervenir con el veredicto de culpabilidad emitido por el jurado en el presente caso.
Nuestra Constitución dispone, en su Artículo II, Sección 11, la presunción de inocencia como uno de los derechos fundamentales de todo acusado. En atención a este principio, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110, ordena que se presuma inocente al acusado en todo proceso criminal mientras no se pruebe lo contrario. En caso de duda razonable acerca de su culpabilidad, éste será absuelto de las acusaciones imputadas en su contra.
El mandato constitucional determina, a su vez, el quántum de la prueba exigida en casos criminales, ya que la presunción de inocencia sólo puede derrotarse con pmeba que establezca la culpabilidad del acusado más allá de duda razonable. Todos los elementos del delito, así como la conexión del acusado con los hechos que se le imputan, tienen que demostrarse con ese quántum o peso de prueba. Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985).
El Estado tiene la carga de presentar la prueba necesaria y pertinente para establecer la culpabilidad del acusado. Este último, a su vez, no tiene obligación alguna de aportar prueba para defenderse y puede descansar plenamente en la presunción de inocencia que le asiste. Pueblo v. Rosaly Soto, 128 D.P.R. 729, 739 (1991); Pueblo v. Irrizarry, 156 D.P.R., a la pág. 787.
*656 La insatisfacción con la suficiencia de la prueba es lo que se conoce como duda razonable. Es decir, para cumplir con este criterio, nuestro sistema de justicia criminal requiere que la prueba que presente el Ministerio Público sea suficiente en derecho, lo que significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545, 552 (1974); Pueblo v. Cabán Torres, 117 D.P.R. 645, 652-653 (1986); Pueblo v. Rosario Reyes, 138 D.P.R. 591, 598 (1995).
Ahora bien, esto no quiere decir que la culpabilidad del acusado tiene que establecerse con certeza matemática. La duda razonable no se refiere a especulaciones del juzgador, sino a duda fundada. La duda razonable y fundada, según nuestra jurisprudencia, es producto del raciocinio de todos los elementos de juicio presentes en el caso. Pueblo v. Cruz Granados 116 D.P.R. 3, 21-22 (1984); Pueblo v. Bigio Pastrana, 116 D.P.R., a la pág. 761; Pueblo v. Irizarry, 156 D.P.R., a la pág. 788.
Para justificar la absolución de un acusado, la duda razonable debe surgir de manera serena, justa e imparcial, luego de que el juzgador considere la totalidad de la evidencia del caso o de la falta de suficiente prueba que apoye la acusación. En síntesis, la duda razonable es la insatisfacción de la conciencia del juzgador con la prueba presentada por el Ministerio Fiscal para demostrar la participación del acusado con los hechos delictivos en cuestión. Pueblo v. Cabán Torres, supra, a la pág. 652.
El Tribunal Supremo ha decidido reiteradamente que los foros apelativos no podríamos confirmar un fallo condenatorio si estamos convencidos de que “.. .un análisis integral de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Nosotros, al igual que el foro apelado, tenemos no sólo el derecho, sino el deber de tener la conciencia tranquila y libre de preocupación.” Id., a la pág. 790.
Por otro lado, en nuestra jurisdicción, la posesión, transportación o portación de un arma de fuego no es un derecho, sino un privilegio controlado y reglamentado por el Estado. Véase, Pueblo v. Del Río, 113 D.P.R. 684, 689 (1982).
El Artículo 8 de la Ley de Armas, Ley Núm. 17 de 19 de enero de 1951, según enmendada, 25 L.P.R.A. § 418, establece que toda persona que transporte o porte cualquier arma de fuego cargada, sin tener una licencia para portar la misma, incurrirá en delito grave. Según el estatuto que precede, el delito de portación ilegal de armas comprende dos (2) elementos, a saber: (1) la persona acusada bajo este estatuto transportó o portó cualquier arma de fuego cargada, y (2) dicho acusado no contaba con los permisos expedidos por el Estado para realizar tal acción. Es menester señalar que el delito tipificado en el Artículo 8 no cuenta con elemento subjetivo alguno de intención. Esto quiere decir que el Estado sólo tiene que probar que el acusado portaba un arma de fuego cargada y que no contaba con los correspondientes permisos para así hacerlo.
Con relación a la primera alegación de la apelante relacionada con este señalamiento de error, esto es, que la única evidencia que la vincula al delito consiste en las declaraciones de dos testigos, debemos señalar que la Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(D), establece que para probar cualquier hecho es suficiente la evidencia directa de un testigo que le merezca al juzgador entero crédito, salvo que por ley se disponga otra cosa. Por otro lado, las conclusiones formuladas por el juzgador de los hechos sobre la credibilidad y suficiencia de la prueba tienen todo el respeto y deferencia que ordinariamente los foros apelativos le extienden a las determinaciones de hechos. Ello porque el juzgador de los hechos está en mejor posición para adjudicar la credibilidad de los testigos. Dichas determinaciones no pueden ser descartadas cuando las mismas, como ocurre en el presente caso, están sostenidas por la prueba. Véase, Pueblo v. Rodríguez Román, 128 D.P.R. 121, 128 (1991).
Durante el juicio, el Ministerio Público presentó, entre otros, los testimonios de Christian Barreto y de la agente Souchet. Christian Barreto declaró que el 19 de noviembre de 2000, entre las 7:30 p.m. y 8:00 p.m., *657 recibió una llamada de la apelante en la cual ésta le propuso que se encontraran en la plaza donde trabajarían en una actividad relacionada con el descubrimiento de Puerto Rico. Cuando llegó a la plaza, la encontró sentada tomando un refresco. Según el testigo, la apelante aparentaba estar nerviosa. Luego de preguntarle varias veces qué le pasaba, sin recibir contestación alguna, ambos se fueron al vehículo de Christian Barreto. Allí, éste le preguntó nuevamente qué le pasaba. La apelante le dijo “...que había matado a su mamá.” Cuando el testigo le preguntó cómo lo hizo, ésta le contestó que le propinó “...un disparo en la nuca... con un arma que le había cogido al papá.” En ese momento, Christian Barreto pidió ver el arma y la apelante la sacó de un bolsillo de su pantalón y se la entregó. Éste describió el arma al jurado y declaró que cuando la examinó “...le hacía falta un plomo...” a la misma. El testigo identificó el arma recuperada por la Policía como la misma que la apelante le mostró la noche de los hechos. Además, Christian Barreto declaró que posteriormente condujeron hasta un caño cercano y que allí lanzó el arma desde el asiento del conductor. [9]
Por su parte, la agente Souchet declaró, entre otras cosas, que Christian Barreto le indicó el lugar aproximado donde lanzó el arma que la apelante le había entregado y con esa información comenzaron la búsqueda de dicha evidencia; que la misma fue recuperada por un voluntario de la Defensa Civil que trabajó con la Policía en tal búsqueda; que el arma resultó ser la misma del padre de la apelante; que pudieron identificarla por su número de serie; que el señor Medina le habí a admitido que no contaba con licencia alguna para dicha arma; y que la apelante le admitió que tomó el arma que su padre guardaba en su vehículo. [10]
Por otro lado, el Sargento Edgar López, de la División de Tránsito de la Policía Estatal, declaró que le entregaron el arma de fuego recuperada del caño; que la misma estaba cubierta de lodo; que la limpió sutilmente y preservó el lodo; que examinó la misma y que llevaba el número de serie 679340, 4 municiones y un casquillo y que la entregó a la agente Souchet. [11] Además, declaró el examinador de armas de fuego Edward Pérez Benitez que, en el transcurso de la investigación, analizó un revólver marca Smith & Wesson modelo 36 calibre 38 especial con el número de serie 679340, un casquillo de bala disparado calibre 38 especial y 4 balas sin disparar calibre 38 especial; y que el resultado de sus análisis fue que el revólver recuperado del caño fue utilizado para matar a la señora Lydia Hernández. [12]
La evidencia presentada por el Ministerio Público, a través de los testimonios descritos anteriormente, efectivamente demostró los elementos del delito de portación ilegal de arma de fuego. Esto es, el Estado demostró que la apelante portó un arma de fuego, con al menos cuatro (4) municiones, el 19 de noviembre de 2000. Por otro lado, se configuró la infracción al Artículo 8 de la Ley de Armas, ya que no existe evidencia o alegación alguna en los autos que nos demuestren que la apelante contaba con las licencias correspondientes expedidas por la Policía de Puerto Rico que justifiquen su posesión o portación de arma de fuego alguna.
No identificamos razón jurídica que nos induzca a intervenir con la evaluación y apreciación de la prueba efectuada por el jurado. Tampoco intervendremos con su evaluación de la credibilidad de los testimonios descritos anteriormente. Entendemos que nuestra intervención con el criterio del jurado sería arbitraria e injustificada. En ausencia de error manifiesto, pasión, prejuicio o parcialidad, no podemos intervenir con la apreciación de la prueba efectuada por el juzgador de hechos, pues éste tuvo la oportunidad de ver y escuchar directamente al testigo y aquilatar su veracidad y confiabilidad. Véase, Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 62-63(1991).
Por otra parte, la segunda argumentación relacionada con este señalamiento de error, esto es, que las admisiones formuladas por la apelante son inadmisibles como evidencia, es frívola e inmeritoria. Ya esta Curia confirmó la determinación del tribunal apelado de admitir como evidencia dichas declaraciones por entender que la apelante renunció a su derecho a no auto incriminarse libre, informada y voluntariamente. [13] Posteriormente, nuestra decisión fue confirmada por el Tribunal Supremo. [14] El asunto es cosa juzgada y los *658 argumentos presentados por la apelante a este nivel son improcedentes.

El jurado no cometió error alguno al declarar a la apelante, Lillian E. Medina Hernández, culpable de infringir el Artículo 8 de la Ley de Armas de 1951.

ni
En su segundo señalamiento de error, la apelante plantea que el tribunal apelado incidió al no aplicar las disposiciones de la ley más beneficiosa al momento de sentenciarla. Según ésta, la ley que más le favorecía era la vigente al momento en que dicho foro dictó su sentencia, según la apelante, el Artículo 4.04 de la Ley de Armas del 2000 y no la ley vigente al momento de los hechos, el Artículo 8 de la Ley de Armas del 1951.
En nuestro ordenamiento jurídico, la ley aplicable a los hechos delictivos ante la consideración de cualquier magistrado es aquella que estuviera vigente al momento de ejecutarse dichos hechos. Véase, Pueblo v. Rexach Benitez, 130 D.P.R. 273, 301 (1992). Este postulado existe para garantizar a todo acusado de delito que no será condenado por alguna conducta que al momento de su ejecución no estaba tipificada como delito, es decir, la prohibición constitucional contra las leyes ex post facto. Constitución del Estado Libre Asociado, Artículo II, sección 12. [15]
No obstante, la rama legislativa adoptó el principio de favorabilidad en el Artículo 4 del Código Penal de 1974 [derogado]. Dicho artículo disponía lo siguiente:
“Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución, la misma se limitará a lo establecido por esa ley.
En los casos de la presente sección, los efectos de la nueva ley operarán de pleno derecho.” (Énfasis nuestro.)
Conforme lo anterior, cualquier acusado tiene derecho a que le apliquen los efectos de una ley posterior, siempre que la misma resulte más favorable en comparación con las disposiciones vigentes al momento de los hechos imputados. Por ello, el principio de favorabilidad constituye una prerrogativa legislativa y no un principio constitucional. Dicho de otra manera, los acusados de delito no tienen el derecho constitucional a la aplicación de la ley más favorable.
Por otro lado, es doctrina establecida que la interpretación de los estatutos penales debe hacerse de manera restrictiva cuando perjudiquen al acusado y liberalmente cuando le favorecen. Véase, Pueblo v. Negrón Caldero, 157 D.P.R. 413 (2002); Pueblo v Ruiz Jiménez, 128 D.P.R. 121 (1991); Pueblo v. Ríos Nogueras, 114 D.P.R. 256 (1983).
La apelante arguye que el Artículo 4.04 (portación de armas de fuego sin licencia) dispone en su último párrafo que cuando un acusado porte un arma sin licencia y a su vez no tenga la intención de cometer un delito con dicha arma, el delito se clasificará como menos grave y su sanción no será mayor de 6 meses de reclusión carcelaria o una multa que no será mayor de $5,000.00 o ambas. [16] Alega la apelante que fue absuelta por el jurado del delito de asesinato en primer grado y que no existe evidencia de su intención de cometer algún delito con el arma de fuego que portaba. No le asiste la razón.
*659 Los hechos imputados a la apelante ocurrieron el 19 de noviembre de 2000. En ese momento estaba vigente el Artículo 8 de la Ley de Armas de 1951. Dicha disposición no contempla pena alguna para el delito de portación sin licencia de arma de fuego cargada. No obstante, el Artículo 42 de la misma ley, 25 L.P.R.A. § 452 [derogado], establece que toda persona convicta de delito grave por violaciones a sus disposiciones, será castigada con pena de reclusión carcelaria por un término fijo de 5 años que podrá ser aumentado a 10 si existen agravantes o reducido a 3 si existen atenuantes.
Por otro lado, la apelante fue sentenciada el 11 de marzo de 2004. Contrario a lo alegado por ésta, la ley aplicable al momento de la Sentencia no era el Artículo 4.04 de la Ley de Armas de 2000, sino el Artículo 5.04 de la Ley de Armas de 2000, según enmendada por la Ley Núm. 27 de 10 de enero de 2002. Dicha enmienda reenumeró el delito tipificado en el antiguo 4.04, pero mantuvo intactos los elementos del delito de portación de armas sin licencia. Sin embargo, la misma eliminó el último párrafo del Artículo 4.04 que otorgaba la oportunidad para que el juez sentenciador pudiera clasificar el delito como uno menos grave con sus correspondientes penas menos onerosas. Esto demuestra la intención evidente de la rama legislativa de eliminar dicho beneficio durante la vigencia de la enmienda discutida.
Por lo anterior, entendemos que el tribunal apelado no cometió error alguno al utilizar los parámetros establecidos en la ley vigente al momento de los hechos. Estos solamente expusieron a la apelante a una pena fija de 5 años de reclusión carcelaria y como imputado por el juez sentenciador, 10 años en caso de que existieran agravantes. Por el contrario, la ley vigente al momento de la Sentencia (el Artículo 5.04 de la Ley de Armas del 2000, según enmendada por la Ley 27 de 10 de enero de 2002), podía exponer a ésta a una pena fija de 10 años y una agravada de 20 años de reclusión, sin la posibilidad de que el magistrado pudiera clasificar el delito imputado como menos grave por la supuesta ausencia de intención de cometer un delito con el arma de fuego portada. Dicha disposición claramente no era la más beneficiosa para la apelante.
IV
Por último, la apelante plantea en su segundo señalamiento de error que el tribunal apelado incidió al imponerle la Sentencia impugnada con agravantes. En síntesis, ésta alega que el Tribunal de Primera Instancia no podía imponer la condena más onerosa sin antes recibir prueba sobre los agravantes considerados por dicho foro. Además, alega que dicho foro no podía considerar agravantes relacionados con el delito imputado de asesinato en primer grado, ya que el jurado la absolvió del mismo.
La Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 171, en lo pertinente, dispone que el juez sentenciador, a propia instancia o por solicitud del acusado o del fiscal, podrá oír prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Dicha Regla también enumera varias circunstancias que el tribunal podrá considerar como agravantes, entre otras, que el acusado utilizó un arma en la comisión del delito; que el acusado indujo a otros a participar en la comisión del delito y que el delito evidencia unos designios criminales planificados.
Asimismo, el Artículo 60 del Código Penal de 1974 [derogado], disponía otros criterios que el tribunal debía ponderar al momento de fijar la pena. Éstos eran los siguientes:
“Dentro de los límites establecidos por la ley, las penas se fijarán de acuerdo a la mayor o menor gravedad del hecho cometido y tomando en consideración, entre otras, las siguientes circunstancias:
a. La naturaleza de la acción u omisión delictuosa.
b. Los medios empleados.
c. La importancia de los deberes transgredidos.
d. La extensión del daño [o] del peligro causado.
*660 e. La edad, educación, historial social y reputación del autor.
f. La conducta relacionada con el delito antes, durante y después de la comisión del mismo.
g. La calidad de los móviles del hecho.
h. La conducta de la víctima relacionada con la transacción delictuosa.
Las relaciones, circunstancias y cualidades personales que aumenten o disminuyan la pena, afectará solamente a la persona a quien correspondan.”
Por su parte, la Regla 162.4 de Procedimiento Criminal, 34 L.P.R.A Ap. II, R. 162.4, establece que, tanto el acusado como el fiscal, podrán solicitar al tribunal sentenciador la celebración de una vista evidenciaría donde el primero tenga la oportunidad de presentar prueba sobre atenuantes que justifiquen la reducción de la pena y el segundo sobre agravantes que justifiquen la imposición de la pena más onerosa.
La vista a la que se refiere la Regla 162.4 no es necesaria cuando las partes no la han solicitado y cuando no existe controversia real sobre un hecho material del caso que requiera la presentación de prueba. Véase, Pueblo v. Rodríguez Santana, 146 D.P.R. 860 (1998); Pueblo v. Echevarría Rodríguez, 128 D.P.R. 299 (1991). Para que se dicte Sentencia conforme a Derecho por un delito con circunstancias agravantes, se debe presentar prueba sobre las circunstancias agravantes de que se trate. Véase, Pueblo v. González Olivencia, 116 D.P.R. 614 (1985). Más aún, los tribunales deben seguir los criterios establecidos en la Regla 171 de Procedimiento Criminal a tenor con los hechos y circunstancias de cada caso en particular y la situación individual de cada convicto. Véase, Pueblo v. Castro Muñiz, 118 D.P.R. 625, 632 (1987).
En el caso de autos, tanto la defensa como el Ministerio Público presentaron mociones indicando la existencia de atenuantes y agravantes, respectivamente. Ante dichas ponencias, el tribunal apelado ordenó la celebración de una vista evidenciaría para darle la oportunidad a éstos presentar la prueba correspondiente. Sin embargo, fue la propia defensa quien solicitó la suspensión de dicha vista luego de que comenzara a presentar su prueba sobre la existencia de atenuantes.
Posteriormente, al dictar la Sentencia de autos, el tribunal apelado consideró las siguientes circunstancias como agravantes:
“a) La convicta portó un arma ilegal perteneciente a su progenitor con la cual se produjo una muerte, en este caso a la madre de la convicta, la que estremeció y conmovió a toda nuestra sociedad.
b) El arma fue extraída de la guagua del progenitor de la convicta.
c) La portación ilegal del arma trajo como consecuencia la muerte de (sic) una gran crueldad, ningún respeto humano y un rechazo a las normas de decencia.
d) El delito evidencia unos designios criminales planificados.
e) Los medios empleados [en la] portación de arma de fuego.
f) La conducta relacionada con el delito antes y durante la comisión del delito.
g) La prueba fue robusta y convincente.” [17] (Énfasis nuestro.)
*661 Si bien es cierto que el Ministerio Público no presentó toda su prueba sobre agravantes durante la vista evidenciaria celebrada por el Tribunal de Primera Instancia el 3 y 5 de marzo de 2004, dicho foro determinó que no existían controversias sobre hechos materiales que justificaran la celebración de la misma, dado que la defensa solicitó su suspensión y el Estado no objetó dicha petición. El foro primario consideró toda la evidencia presentada durante el juicio, la cual fue extensa, para concluir que existían agravantes que justificaban la imposición de la pena más onerosa en este caso. Concurrimos con el foro sentenciador.
Aun considerando que existiera algún impedimento en la consideración de circunstancias relacionadas con el delito imputado de asesinato en primer grado, existía en autos evidencia adicional que establecía otras circunstancias sobre las cuales el tribunal a quo orientó su discreción al determinar la pena aplicable. Además, dicho foro consideró tres agravantes que no estaban relacionados de manera alguna con tal delito. Esos tres agravantes concuerdan con los criterios establecidos tanto en la Regla 171 de Procedimiento Criminal como en el antes vigente Artículo 60 del Código Penal del 1974.
Debemos recordarle a la apelante que, al momento de imponer la pena, el Tribunal de Primera Instancia tiene amplia discreción para disponer lo que proceda en derecho. De igual manera, dicho foro tiene la facultad de imponer, mota proprio, una pena con agravantes, si éstos surgen de la prueba desfilada durante el juicio. Véase, Pueblo v. Castro Muñiz, supra, a la pág. 632. En ausencia de elementos que nos permitan determinar que el foro de instancia abusó de su discreción al imponer una sentencia con agravantes, no podemos intervenir con su discreción. Véase, Pueblo v. Narváez Narváez, 122 D.P.R. 80 (1988); Pueblo v. Pérez Zayas, 116 D.P.R. 197 (1985). Como regla general, los tribunales apelativos no intervendremos con el ejercicio de la discreción del Tribunal de Primera Instancia en la imposición de la pena, salvo en los casos de claro abuso de discreción.
Por no identificar elemento o alegación alguna en autos que nos convenza de que el tribunal apelado abusó de su discreción al emitir la Sentencia impugnada, no intervendremos con la misma. Entendemos que dicho foro no cometió el segundo error imputado por la apelante.
V
Por los fundamentos antes expuestos y de conformidad con el Derecho citado, CONFIRMAMOS el veredicto emitido por el jurado y la Sentencia emitida por el tribunal a quo en el caso de autos.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria.
Dimarie Alicea Lozada Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 8

. Este caso se perfeccionó finalmente y estuvo listo para nuestra determinación el 21 de julio de 2009.

. Debemos aclarar que, al momento de los hechos, esto es, el 19 de noviembre de 2000, el delito de portación de armas sin licencia estaba tipificado en el mencionado Artículo 8 de la Ley de Armas de 2000, Ley 404 de 11 de septiembre de 2000. No obstante, haber sido aprobada antes de la fecha de los hechos imputados, la vigencia de esta ley comenzó el 1 de marzo de 2001. Así mismo, en el presente caso no son-aplicables las disposiciones del Nuevo Código Penal de 2004 (vigente desde el 1 de mayo de 2005). El Artículo 308 de ese cuerpo legal establece, en lo pertinente, que “[l]a conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal [del 1974] aquí derogado o de cualquier otra ley especial de carácter penal, se regirá por las leyes vigentes al momento del hecho.”

. Al momento de los hechos, la apelante tenía sólo 15 años de edad.

. Testimonio de la Agente Magaly Souchet.

. La policía brindó protección durante el entierro de la señora Lydia Hernández debido a los mensajes que amenazaban directamente a la apelante. Entre los agentes asignados a esa tarea se encontraba la agente investigadora Magaly Souchet.

. En ese momento, las autoridades entendieron que era prudente involucrar- a la Oficina de la Procuradora de Menores, ya que habían identificado, mediante las declaraciones de la apelante, al menor Will como un posible sospechoso de los hechos delictivos.

. Testimonio de la agente Souchet.

. Véase, Sentencia, pág. 3.

. Testimonio de Christian Barreto.

. Testimonio de la agente Magaly Souchet.

. Testimonio del Sargento Edgar López.

. Testimonio del señor Edward Pérez Benitez.

. Véase, Pueblo v. Lillian E. Medina Hernández, KLCE-01-00855, Sentencia emitida el 9 de agosto de 2001 por el panel integrado por su Presidente y Juez Ponente, el Hon. Juez Córdova Arone y los Honorables Jueces Feliciano Acevedo y Salas Soler.

. Véase, Pueblo v. Lillian E. Medina Hernández, 158 D.P.R. 489 (2003), Opinión emitida el 5 de febrero de 2003 por el Honorable Juez Ponente Francisco Rebollo López.

. La última oración de la Sección 12 de la Carta de Derechos de nuestra Constitución establece que “[n]o se aprobarán leyes ex post facto ni proyectos para condenar sin celebración de juicio.”

. El último párrafo del Artículo 4.04 de la Ley de Armas de 2000 lee como sigue: “No obstante lo anterior, cuando una persona incurra en las conductas prohibidas por este artículo sin la intención de cometer un delito con el anna de fuego portada sin licencia, incurrirá en delito menos grave, y convicta que fuere, será sancionada con pena de reclusión por un término fijo de seis (6) meses, pena de multa que no excederá de cinco mil (5,000) dólares, o ambas...”. (Énfasis nuestro.)

. Véase, Sentencia, pág. 7.